Morgan E. Pietz (SBN 260629)
THE PIETZ LAW FIRM
3770 Highland Ave., Ste. 206
Manhattan Beach, CA 90266
mpietz@pietzlawfirm.com
Telephone:   (310) 424-5557
Facsimile :   (310) 546-5301

Attorney for:   Putative John Doe "X" in 3:12-cv-1475-CAB-WMC

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK COLLINS, INC., a California corporation,<br><br>                    Plaintiff,<br><br>          v.<br><br>JOHN DOES 1 through 12,<br><br>                    Defendants. | Case Number:  3:12-cv-1475-CAB-WMC<br><br>Assigned to Hon. Cathy Ann Bencivengo[1]<br>Referred to Hon. William McCurine, Jr.<br><br>**MEMORANDUM IN SUPPORT OF JOHN DOE'S OMNIBUS MOTION THAT THE COURT: (1) SEVER AND DISMISS ALL JOHN DOES OTHER THAN DOE NO. 1; AND (2) QUASH ALL OUTSTANDING SUBPOENAS**<br><br>Hearing Date:   November 30, 2012<br>Hearing Time:   1:30 p.m.<br>Hearing Room:  Courtroom 2<br>                        Before Judge Bencivengo[2] |

---

[1] Possible transfer pending per Notice of Related Cases filed by undersigned September 21, 2012.

[2] Since severance is normally an issue for the District Judge, this motion has been noticed to the District Judge.  However, since this motion also involves the interrelated issue of the propriety of third-party subpoenas, it can also be considered a discovery matter.  Movant has no objection to the referral of the motion to the Magistrate Judge for a consolidated order and recommendation.

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ......................................................................... ii

TABLE OF AUTHORITIES ..................................................................iii

I. INTRODUCTION AND SUMMARY .................................................. 1

II. BACKGROUND ............................................................................. 5

    (a) Patrick Collins' Litigation Strategy ............................................. 5

    (b) Procedural History of Patrick Collins Cases in this District........... 8

III. JOINDER IS NOT PERMISSIBLE ................................................ 10

    (a) Standard for Joinder.................................................................. 10

    (b) Majority of Court are Rejecting Plaintiff's "Swarm Joinder" Theory.............. 10

    (c) John Does Using BitTorrent Months Apart from One Another Are Not Part of the Same Swarm and Not Part of Same Transaction or Occurrence ................. 14

    (d) As Between Multiple Does, Different Factual and Legal Issues Will Predominate ........................................................................ 16

    (e) Even if Joinder Were Permissible, the Court Should Still Exercise its Discretion and Sever the Does in Light of Plaintiff's "Abusive Litigation Tactics" and the Burden on the Does and the Courts ................................................. 16

IV. THE SUBPOENAS SHOULD BE QUASHED .......................................... 19

    (a) If the Court Severs the Does, it Should Dismiss them Without Prejudice and Quash the Subpoenas Seeking Their Identifying Information........................... 19

    (b) The Court Should Have Denied Plaintiff's Unopposed Requests for Early Discovery ....................................................................... 20

        (1) Plaintiff Has Identified no Discovery Plan Making it "Very Likely" that the Requested Subpoenas Will Identify the True Doe Defendants as Required by Gillespie ........................................... 20

        (2) The Early Discovery Request Should Also Have Failed the Requisite First Amendment Balancing Test Mandated by Semitool ....................... 21

            (A) Online File Sharing Protected by Limited First Amendment Right to Anonymity ................................................. 21

            (B) The Four Semitool Factors ................................................. 22

            (C) In Performing the Semitool Analysis the Court should have Concluded that the Complaint Could not Withstand a Hypothetical Motion to Dismiss Does Other than Doe No. 1 for Misjoinder ................................... 22

            (D) In Performing the Semitool Analysis, the Fact that Plaintiff Rarely if Ever Serves Anyone Should Have Weighed Against it ................................................. 23

V. CONCLUSION ............................................................................ 24

**MEMORANDUM IN SUPPORT OF JOHN DOE'S OMNIBUS MOTION THAT THE COURT:**
**(1) SEVER AND DISMISS ALL JOHN DOES OTHER THAN DOE NO. 1; AND**
**(2) QUASH ALL OUTSTANDING SUBPOENAS**

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*AF Holdings LLC v. Does 1-1,058*, 12-cv-0048-BAH, Dkt. 46, 8/6/12……….……….1, 13

*AF Holdings LLC v. Does 1-96*, N.D. Cal. No. 11-cv-3335-JSC,
  Dkt. No. 14, 9/27/11…………………………………………………….4, 20

*AF Holdings LLC v. Does 1-97*, 2011 U.S. Dist. LEXIS 78636,
  (N.D. Cal. July 20, 2011) …………………………………….…..10, 11

*AF Holdings, LLC v. John Doe*, D. Min. Case No. 12-cv-1445,
  Dkt. No. 7, 7/5/12……………………………………………...4

*Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521-522
  (5th Cir. 2010) …………………………………………………passim

*Bautista v. Los Angeles County*, 216 F.3d 837, 842-843 (9th Cir. 2000) …………10, 14

*Boy Racer Inc. v. Does 1-60*, 11-cv-01738-SI, 2011, 2011 U.S. Dist. LEXIS 92994, at *4
  (N.D. Cal. Aug. 19, 2011) …………………………………………passim

*Call of the Wild Movie, LLC v. Does 1-1,062*, D.D.C. Case No. CV-10-455,
  Dkt. No. 40, 3/22/2011……...…………………………………12

*Diabolic Video Prods. v. Does 1-2099*, 10 Civ. 5865, 2011 U.S. Dist. LEXIS 58351
  (N.D. Cal. May 31, 2011)………...……………………………passim

*Digital Sins, Inc. v. John Does 1-245*, S.D.N.Y. Case No. 11-cv-8170,
  Dkt. No. 18, 5/15/12 ("*Digital Sins*") ……………………………passim

*DigiProtect USA Corp. v. Doe*, 2011 U.S. Dist. LEXIS 109464, 8-9 (S.D.N.Y. Sept. 26,
  2011) ……………………………………………………………2

*Discount Video Center, Inc. v. Does 1-29*, D. Mass. Case No. 12-cv-10805, Dkt. No. 40,
  8/24/12, p. 3…………………………………………………7

*First Time Videos, LLC v. Does 1-76*, 2011 WL 3586245, N.D. Ill. Case No. 11-cv-3831,
  8/16/11……………………………………………………..11

-iii-

*Gillespie v. Civiletti,* 629 F.2d 637, 642–43 (9th Cir. 1980)……………………………3, 20

*Hard Drive Productions, Inc. v. Does 1-188*, 809 F. Supp. 2d 1150

(N.D. Cal. August 23, 2011) Case No. 11-cv-01566, Dkt. No. 18

("*Hard Drive Prods.*") …………..……………..……………..……………..passim

*Hard Drive Prod's., Inc. v. Does 1-90*, N.D. Cal. Case No. 5:11-cv-3852-HRL……..3, 23

*Hard Drive Prods. v. Doe*, 2011 U.S. Dist. LEXIS 89858

(N.D. Cal. Aug. 12, 2011)……………………………………………………3, 23

*Hubbard v. Hougland*, 2010 U.S. Dist. LEXIS 46184 (E.D. Cal. Apr. 5, 2010) …….10, 14

*In re: BitTorrent Adult Film Copyright Infringement Cases,*

2012 U.S. Dist. LEXIS 61447 (E.D.N.Y. May 1, 2012)

Case No. CV-11-3995-DRH-GRB, Dkt. No. 39

("*In re: Adult Film Cases*")…....……………..……………..……………passim

*In re: BitTorrent Adult Film Copyright Infringement Cases,*

E.D.N.Y. Case No. 12-cv-1147-JS-GRB,

Dkt. No. 9, 7/31/12 (*In re: Adult Film Cases II*)………………………………17, 18

*K-Beech, Inc. v. Does 1-85*, 2011 U.S. Dist. LEXIS 124581

(E.D. Va. Oct. 5, 2011) ……………………………………………………...10

*Liberty Media Holdings, LLC*, 2011 WL 5190106, at *3

(S.D. Fla. Nov. 1, 2011) ……………………………………………………15

*Liberty Media Holdings, LLC v. BitTorrent Swarm,* 2011 WL 5190048, at *2–4 (S.D. Fla.

Nov. 1 2011) ……………………………………………………..……15

*Malibu Media v. John Does 1-10*, C.D. Cal. Case No. 12-cv-3623-ODW-PJW,

Dkt. No. 7, 6/27/12……………………………………………….......passim

*Malibu Media, LLC v. John Does 1-11*, 2012 U.S. Dist. LEXIS 94648

(D.D.C. July 10, 2012) …………………………………….....…………….6

*Malibu Media, LLC v. Doe*, 2012 U.S. Dist. LEXIS 94705

(E.D. Cal. July 6, 2012) …………………………………………………..4

*Malibu Media, LLC* v. Doe, 2012 U.S. Dist. LEXIS 96333

**MEMORANDUM IN SUPPORT OF JOHN DOE'S OMNIBUS MOTION THAT THE COURT:**
**(1) SEVER AND DISMISS ALL JOHN DOES OTHER THAN DOE NO. 1; AND**
**(2) QUASH ALL OUTSTANDING SUBPOENAS**

(E.D. Cal. July 10, 2012) …………………………………………....4

*Malibu Media, LLC v. Doe*, 2012 U.S. Dist. LEXIS 96351

(E.D. Cal. July 10, 2012) …………………………………………....4

*Malibu Media, LLC v. Does*, 2012 U.S. Dist. LEXIS 114216, 13-14 (D. Colo.

August 14, 2012)……………………………………………….…….4

*Malibu Media, LLC v. Does*, 2012 U.S. Dist. LEXIS 114236, 13-14 (D. Colo.

August 14, 2012)……………………………………………….…….4

*Next Phase Distrib., Inc. v. Does 1-27*, 2012 U.S. Dist. LEXIS 107648, 11-12

(S.D.N.Y. July 31, 2012) ……………………………………………2, 18

*Pacific Century Int'l., Ltd. v. John Does 1-37*, – F. Supp. 2d –, 2012 WL 1072312

(N.D. Ill. Mar. 30, 2012) Case No. 12-cv-1057, Dkt. No. 23……………...........12

*Patrick Collins, Inc. v. Doe*, 2012 U.S. Dist. LEXIS 75986

(E.D.N.Y. May 31, 2012) …………………………………………...4

*Patrick Collins, Inc. v. Doe*, 2012 U.S. Dist. LEXIS 96350

(E.D. Cal. July 10, 2012) …………………………………………...4

*Patrick Collins, Inc. v. Does 1-58*, U.S. Dist. LEXIS 120235,

(E.D. Va. Oct. 5, 2011) …………………………………………11

*Patrick Collins, Inc. v. Doe*, 2012 U.S. Dist. LEXIS 36232

(D. Ariz. Mar. 19, 2012)…………………………………………...22

*Patrick Collins, Inc. v. John Does 1-21*, 2012 WL 1190840,

(E.D. Mich. Apr. 5, 2012)…………………………………………......13

*Raw Films, Inc. v. Does 1-32*, 2011 WL 6840590, at \*2 (N.D. Ga. Dec. 29, 2011) …11, 15

*SBO Pictures, Inc. v. Does 1-20*, No. 12 Civ. 3925 (SAS), 2012 WL 2304253,

(S.D.N.Y. June 18, 2012………………………………………………...18

*Semitool, Inc. v. Tokyo Electron America, Inc.*, 208 F.R.D. 273,

(N.D. Cal. 2002)……………………………………………………...22

*Sony Music Entm't Inc. v. Does 1–40*, 326 F. Supp. 2d 556, 566 (S.D.N.Y. 2004)…..21, 22

*W. Coast Prods. v. Swarm Sharing Hash Files*, 2012 U.S. Dist. LEXIS 123170

**MEMORANDUM IN SUPPORT OF JOHN DOE'S OMNIBUS MOTION THAT THE COURT:**
**(1) SEVER AND DISMISS ALL JOHN DOES OTHER THAN DOE NO. 1; AND**
**(2) QUASH ALL OUTSTANDING SUBPOENAS**

(W.D. La. Aug. 17, 2012) …………………………………………...……….4

*Zero Tolerance Entm't, Inc. v. Doe*, 2012 U.S. Dist. LEXIS 78834

    (S.D.N.Y. June 5, 2012)………………………………………………………4


**Rules**

Federal Rule of Civil Procedure 20(a)(2) ……………………………………..8, 11

Federal Rule of Civil Procedure 21 ……………………………………….. 11


**Secondary Source**

4-20 Moore's Federal Practice - Civil § 20.02………………………………………9

**MEMORANDUM IN SUPPORT OF JOHN DOE'S OMNIBUS MOTION THAT THE COURT:
(1) SEVER AND DISMISS ALL JOHN DOES OTHER THAN DOE NO. 1; AND
(2) QUASH ALL OUTSTANDING SUBPOENAS**

# I.  INTRODUCTION AND SUMMARY

Patrick Collins' cases in this District are part of the "nationwide blizzard of civil actions brought by purveyors of pornographic films alleging copyright infringement by individuals utilizing a computer protocol known as BitTorrent." *In re: BitTorrent Adult Film Copyright Infringement Cases,* 2012 U.S. Dist. LEXIS 61447 (E.D.N.Y. May 1, 2012) Case No. CV-11-3995-DRH-GRB, Dkt. No. 39 ("*In re: Adult Film Cases*") (comprehensive order and report of Magistrate Judge Gary Brown ordering severance of Does in cases filed by Patrick Collins and Malibu Media, among others).  Courts across the country are growing increasingly skeptical of these cases; Judge Wright of the Central District of California, while presiding over a Malibu Media case filed by plaintiff's counsel here, recently described this kind of litigation as "***essentially an extortion scheme***." *Malibu Media v. John Does 1-10*, C.D. Cal. Case No. 12-cv-3623-ODW-PJW, docket no. 7, 6/27/12, p. 6 (emphasis added).  Exactly how this "extortion scheme" works is detailed in the next section.

The foundation for this "extortion scheme" though is a perversion of the permissive joinder rule.  Simply put, Rule 20 was never intended to be a weapon that allows copyright owners to file what amount to reverse class actions against multiple defendants accused of file sharing. Plaintiff's theory of "swarm joinder" is being rejected by a majority of Courts across the country.  *E.g., Digital Sins, Inc. v. John Does 1-245*, S.D.N.Y. Case No. 11-cv-8170, Dkt. No. 18, 5/15/12, p. 3 (McMahon, J.) (severing Does, collecting cases and noting "[t]here is no need for this Court to write another lengthy opinion discussing why plaintiff's theory is wrong"); *cf. AF Holdings LLC v. Does 1-1,058*, D.D.C. Case No. 12-cv-0048 Dkt. 46, 8/6/12 (Howell, J.) (denying ISP's motion to quash and refusing severance, but certifying swarm joinder issue for interlocutory appeal to the D.C. Circuit).

Further, as many courts have held—and increasingly so—alleging that Does downloaded pieces of the same movies ***months apart from one another*** does not mean the Does are part of the same "transaction or occurrence" for the purposes of Rule 20.  *E.g., Malibu Media v. John Does 1-10*, C.D. Cal. Case No. 12-cv-3623-ODW-PJW, docket no.

-1-

7, 6/27/12, p. 5 ("The loose proximity of the alleged infringements (March 5, 2012–April 12, 2012) does not show that these Defendants participated in the same swarm"); *Hard Drive Productions, Inc. v. Does 1-188*, 809 F. Supp. 2d 1150  (N.D. Cal. August 23, 2011) Case No. 11-cv-01566, Dkt. No. 18 ("*Hard Drive Prods.*") (same, 63 days); *DigiProtect USA Corp. v. Doe*, 2011 U.S. Dist. LEXIS 109464, 8-9 (S.D.N.Y. Sept. 26, 2011) (for defendants to be part of same "swarm," must have downloaded movies at "overlapping" times).

Although there are some common questions of law and fact, sufficient that plaintiff's multiple cases should be related to one another, if discovery proceeds, the different "questions of law or fact" between the different Does in the same cases will predominate, given that each Doe will have different factual scenarios and legal defenses (*e.g.*, who had access to the Does' Wifi network?).  *See In re: BitTorrent Adult Film Copyright Infringement Cases,* 2012 U.S. Dist. LEXIS 61447 (E.D.N.Y. May 1, 2012), Case No. CV-11-3995-DRH-GRB, Dkt. No. 39 ("*In re: Adult Film Cases*") (Brown, M.J.) (noting the "panoply of individual" defenses the different Doe defendants will have, and finding that "[t]he individualized determinations required far outweigh the common questions in terms of discovery, evidence, and effort required.").

Even if joinder were permissible, the Court should still exercise its discretion and sever the Does in light of plaintiff's "abusive litigation tactics" (*See* Dec'l. of Morgan E. Pietz, ¶¶ 6-27) and the burden on the Courts, the ISPs and the Does.  *E.g., Hard Drive Prod's.*, *supra*, 809 F. Supp. at 1164; *Next Phase Distrib., Inc. v. Does 1-27*, 2012 U.S. Dist. LEXIS 107648, 11-12 (S.D.N.Y. July 31, 2012) (addressing split in authority on "swarm joinder," but severing Does as a matter of the Court's discretion for the reasons set forth in *In re: Adult Film Cases*); *see also Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521-522 (5th Cir. 2010) (court has discretion to deny permissive joinder even when test is met).

After severing the mis-joined putative Doe defendants, the Court should also quash the outstanding subpoenas seeking to identify those Doe defendants. *In re: BitTorrent*

**MEMORANDUM IN SUPPORT OF JOHN DOE'S OMNIBUS MOTION THAT THE COURT:**
**(1) SEVER AND DISMISS ALL JOHN DOES OTHER THAN DOE NO. 1; AND**
**(2) QUASH ALL OUTSTANDING SUBPOENAS**

*Adult Film Copyright Infringement Cases,* 2012 U.S. Dist. LEXIS 61447 (E.D.N.Y. May 1, 2012) Case No. CV-11-3995-DRH-GRB, Dkt. No. 39, pp. 23-25; *Digital Sins, Inc. v. John Does 1-245*, S.D.N.Y. Case No. 11-cv-8170, Dkt. No. 18, 5/15/12, p. 7 ("Because I have severed and dismissed all of the claims against the defendants, I hereby, *sua sponte*, quash any subpoena that may be outstanding to any Internet service provider seeking information about the identity of any John Doe other than John Doe 1.  Plaintiff is directed to send a copy of this order within 24 hours of its issuance to any and every internet service provider who has been served with a subpoena for any information concerning any other John Doe defendant.").  To do otherwise would only encourage plaintiffs to try and avoid paying statutorily required filing fees by mis-joining as many Does as possible, and then forcing the Does to file, and the Court to hear, motions for severance.

Given the defect in joinder issue noted above, and the potential for abuse posed by these kinds of cases, the Court should have denied plaintiff's ***unopposed*** request for early discovery in the first place, and should now vacate the order authorizing plaintiff to issue subpoenas, and quash all outstanding subpoenas. *Hard Drive Prod's., Inc. v. Does 1-90*, N.D. Cal. Case No. 5:11-cv-3852-HRL ("simultaneous consideration of the application for early discovery and joinder has become the norm for courts in this district faced with similar cases. See, e.g., Hard Drive Prods. v. Doe, 2011 U.S. Dist. LEXIS 89858 (N.D. Cal. Aug. 12, 2011); Boy Racer v. Does, 2011 U.S. Dist. LEXIS 86746 (N.D. Cal. Aug. 5, 2011); Diabolic Video Prods. v. Does 1-2099, 2011 U.S. Dist. LEXIS 58351 (N.D. Cal. May 31, 2011)").

Multiple courts have held that early discovery should be denied in cases like these because the requested discovery is not "very likely" to reveal the identities of the actual defendants, as required under *Gillespie v. Civiletti. Hard Drive Productions, Inc. v. Does 1-188*, 809 F. Supp. 2d 1150 (N.D. Cal. August 23, 2011) ("*Hard Drive Prods.*") (denying early discovery because "It is abundantly clear that plaintiff's requested discovery is not '***very likely***' to reveal the identities of the Doe defendants."); *citing Gillespie v. Civiletti,* 629 F.2d 637, 642–43 (9th Cir. 1980); *see also, e.g., AF Holdings LLC v. Does 1-96*, N.D.

Cal. No. 11-cv-3335-JSC, Dkt. No. 14, 9/27/11, p. 6 ("*AF Holdings*") (denying requested early discovery because it was not "***very likely*** to enable Plaintiff to identify the doe defendants."); *AF Holdings, LLC v. John Doe*, D. Min. Case No. 12-cv-1445, Dkt. No. 7, 7/5/12 (denying early discovery because "the requested discovery was '***not very likely***' to reveal the identity of the alleged infringer").

Plaintiff presents no plan for how it intends to go from indentifying ISP subscribers to identifying actual John Doe defendants; and in reality, plaintiff does not care to do so.  It simply wants to use the Court's subpoena power to extort "settlements" from ISP subscribers, upon threat of publicly "naming" them in a lawsuit alleging they illegally downloaded pornography, regardless of whether they committed the alleged infringement or not.  The prior sentence is, in essence, the heart of plaintiff's business model.

The Court should put a stop to this "extortion scheme," follow the lead of many other courts since,[3] and adopt the "sensible protocol" developed by Magistrate Judge Brown in direct response to cases filed by Patrick Collins and Malibu Media. *In re: Adult Film Cases, supra,* 2012 U.S. Dist. LEXIS 61447 (E.D.N.Y. May 1, 2012). This motion asks the Court to do precisely that, and it should therefore be granted.

---

[3] *Digital Sins, Inc.*, *supra*, at p. 8 (reviewing prior cases,  explicitly adopting "most especially the comprehensive Report and Recommendation of the Hon. Gary R. Brown," and ordering that, in the future, "***any effort to take discovery prior to service must follow the sensible protocol adopted by Magistrate Judge Brown*** in *In re: []Adult Film [] Cases.*"); *see also, e.g., Patrick Collins, Inc. v. Doe*, 2012 U.S. Dist. LEXIS 75986, 2-3 (E.D.N.Y. May 31, 2012) (citing *In re: Adult Film Cases* and finding "that ***for the reasons set forth in the well-reasoned decision of Magistrate Judge Gary R. Brown*** dated May 1, 2012, plaintiff has not satisfied the requirement of establishing that defendants participated in the same "transaction" or "occurrence" within the meaning of  Fed. R. Civ. P. 20."); *Zero Tolerance Entm't, Inc. v. Doe*, 2012 U.S. Dist. LEXIS 78834 (S.D.N.Y. June 5, 2012) (severing all Does other than Doe No. 1 and ***explicitly "adopt[ing] the procedures of Judge McMahon and Magistrate Judge Brown***"); *Malibu Media, LLC v. Doe*, 2012 U.S. Dist. LEXIS 96351 (E.D. Cal. July 10, 2012) (citing *In re: Adult Film Cases* and denying early discovery for all Does other than Doe No. 1); *Patrick Collins, Inc. v. Doe*, 2012 U.S. Dist. LEXIS 96350 (E.D. Cal. July 10, 2012) (same); *Malibu Media, LLC* v. Doe, 2012 U.S. Dist. LEXIS 96333 (E.D. Cal. July 10, 2012) (same); *Malibu Media, LLC v. Doe*, 2012 U.S. Dist. LEXIS 94705 (E.D. Cal. July 6, 2012) (same).

**MEMORANDUM IN SUPPORT OF JOHN DOE'S OMNIBUS MOTION THAT THE COURT:
(1) SEVER AND DISMISS ALL JOHN DOES OTHER THAN DOE NO. 1; AND
(2) QUASH ALL OUTSTANDING SUBPOENAS**

## II.  BACKGROUND

**(a)     Patrick Collins' Litigation Strategy**

Patrick Collins, Inc., is a pornographer that has recently gotten into a new line of business: coercing copyright infringement "settlements." In these lawsuits, Patrick Collins alleges that unknown individuals used certain I.P. addresses to access the Internet, and then used an application called BitTorrent to illegally download Patric Collins' pornographic movies.[4]  After filing a complaint, Patrick Collins generally seeks leave of court to conduct early discovery and issue subpoenas to Internet Service Providers, which demand that the ISPs disclose the account details of the I.P. addresses used to download plaintiff's movies. In order to obtain Court authorization to issue subpoenas—the single key legal issue driving Patrick Collins's business model—Patrick Collins generally makes several material misrepresentations to the Court.  Notably, here Patrick Collins claimed, incorrectly, in its original early discovery requests that courts are "unanimous" in granting early discovery in cases like this and represents that "the discovery sought will facilitate identification of the defendants and service of process."  Since Patrick Collins's early discovery requests are usually ***unopposed***, many Courts, including Courts of this District, have allowed Patrick Collins to issue subpoenas to the ISPs.

However, really, this is all a sham.  Patrick Collins pretends that it is interested in "identifying" and "serving" actual defendants.  But that is simply not true.  As has been shown district by district, in dozens if not hundreds of cases, what plaintiff is really interested in is using this Court's subpoena power, and the stigma associated with

---

[4] The very first step in Patrick Collins' business model is that it hires a "technical expert" which "logs" the I.P. addresses that are used to download plaintiff's content on BitTorrent.  In computer terminology, plaintiff appears to be operating what is called a "honeypot," which is essentially a baited trap. Plaintiff's pornographic movies are the bait, and the trap is these lawsuits.  Rather than try and remove its content from BitTorrent by filing DMCA takedown notices, plaintiff prefers instead to actively participate in—and possibly facilitate—the infringing downloads of which it now complains.  In other words, plaintiff appears to prefer to collect a list of potential people to sue rather than take other simple, affirmative steps to remove its content from BitTorrent.

pornography, to leverage improper "settlements" from Internet subscribers who may **_or may not_** have actually downloaded plaintiff's movies.

One key problem with this scheme—which was not addressed in plaintiff's moving papers seeking authorization to issue subpoenas—is that many of the subscribers whose information will be turned over by the ISPs are not actually the people who downloaded plaintiff's pornographic movies.  The unfortunate people sucked into this morass are, by definition, always the people who happen to pay the Internet/cable bill.  In an age when most homes have routers and wireless networks and multiple computers share a single I.P. address, the actual infringer could be a teenage son with a laptop, an invitee, a hacker, or any neighbor using an unencrypted wireless signal. Thus, "there is a reasonable likelihood that the [the Does] may have had no involvement in the alleged illegal downloading that has been linked to his or her IP address." *Malibu Media, LLC v. John Does 1-11*, 2012 U.S. Dist. LEXIS 94648 (D.D.C. July 10, 2012).  Indeed, as one judge observed in another of these cases, "*Plaintiff's counsel estimated that 30% of the names turned over to the ISP's are not those of the individuals who actually downloaded or shared copyrighted material.*" *Digital Sins, Inc. v. Does 1-176,* -- F.R.D. --, 2012 WL 263491, at *3 (S.D.N.Y. Jan. 30, 2012).

This inconvenient fact, however, generally does not stop the plaintiff from demanding that a subscriber (i.e., whomever happens to pay the bill) should fork over several thousand dollars to settle the case, upon threat of being publicly accused of illegally downloading explicit pornography. That threat is essentially the heart of this business: pay up, or else plaintiff will publicly shame you as someone who watches pornography.  Many subscribers, even if they are innocent, simply pay the ransom rather than face the expense, uncertainty and potential embarrassment of defending themselves.

Plaintiff files hundreds of these cases nationwide, against thousands of Does, knowing full well that none of the Does will ever be served, or even named, except perhaps for a token few, to make a show of it.  When seeking leave to issue subpoenas prior to the 26(f) conference, plaintiff's counsel typically represents, and she reiterated it again here,

"that the discovery sought will facilitate identification of the defendants and service of process." Kushner Dec'l. i/s/o Early Discovery Request at ¶ 4. While the subpoenas requested by plaintiff in these cases might *theoretically* "facilitate" identification of and service upon actual defendants, in *actuality*, based on plaintiff's past track record, the subpoenas *seldom, if ever* do.  Dec'l. of Morgan E. Pietz, ¶ 27.[5]

However, the issuance of subpoenas *almost always* results in the consummation of "settlements," many of which are paid by people who did not actually download plaintiff's movies, but do not wish to incur the expense, uncertainty and potential embarrassment of defending themselves.  As Judge Wright, who was previously assigned one of Malibu Media cases in Central District noted, "The federal courts are not cogs in a plaintiff's copyright-enforcement business model. ***The Court will not idly watch what is essentially an extortion scheme, for a case that plaintiff has no intention of bringing to trial***." *Malibu Media v. John Does 1-10*, C.D. Cal. Case No. 12-cv-3623-ODW-PJW, docket no. 7, 6/27/12, p. 6.  (Emphasis added).

Some plaintiff's lawyers in these cases have taken a step in the right direction by admitting that actually naming and serving someone with a complaint in these cases, based on nothing more than the fact that they were identified by the ISP as the person who pays the bill, would likely violate Rule 11.  *E.g., Discount Video Center, Inc. v. Does 1-29*, D. Mass. Case No. 12-cv-10805, Dkt. No. 40, 8/24/12, p. 3 (Doe Mtn. to dismiss). However, plaintiff's counsel here does not seem prepared to make such a concession.  Instead, per plaintiff's renewed motion papers filed recently in the Central District of California, in Malibu Media case, plaintiff's counsel seems ready to treat ISP subscribers as actual defendants.  Ms. Kushner stated that "Plaintiff attached as Exhibit A to each Complaint a

---

[5] In reply papers filed in the Central District of California in September, Malibu Media points to the fact that it has apparently *named* individual defendants in 18 cases nationwide, out of a total of nearly 300 cases filed against nearly 5,000 Does, as conclusive proof that it is serious about "litigating" these cases.  A closer look at the docket in each of these 18 cases, however, reveals that Malibu Media has actually *served* precisely 4 defendants, in 2 cases, for a national service average of approximately 0.04%.  *See* Dec'l. of Morgan E. Pietz, ¶¶ 25–27.

list of IP address, the date and time of the infringing act, and corresponding ISPs.  Plaintiff has thereby demonstrated that Defendants can be corresponded to their allegedly infringing acts." P's Renewed Motion, p. 4.  There is a step missing here; plaintiff simply assumes, incorrectly, that whomever pays the bill for the Internet connection "can be corresponded" to the Defendant that committed the allegedly infringing acts.  Maybe yes, maybe no; but plaintiff has no plan to get from A to C.  Further, as far as the undersigned is aware, when plaintiff's professional "settlement negotiators" have called up ISP subscribers or their counsel, threatened to "name" them, and pressured them to settle over the phone, there has never been any mention of Rule 11 safeguards.

Finally, if plaintiff's past history in this District and in the Central District of California is any guide, after requesting as many extensions as it can get of the Rule 4(m) service deadline—to allow its "settlement negotiators" to work the phones for as long as possible—Patrick Collins will simply dismiss the cases, or most if not all Does, without prejudice.  Dec'l. of Morgan E. Pietz, ¶¶ 24, 27

**(b)      Procedural History of Patrick Collins Cases in this District**

One of Patrick Collins's tactics in its nationwide settlement business—or, at least, one of the tactics employed by plaintiff's counsel here, Ms. Leemore Kushner—is to make a policy of not filing Notices of Related Cases.  In the Central District of California, so far this year, Ms. Kushner has filed over 30 lawsuits on behalf of Malibu Media and zero Notices of Related Cases.  Similarly, Ms. Kushner did not initially file any Notices of Related Cases in the Eastern District of California.  So, too, with respect to cases Ms. Kushner has filed on behalf of Patrick Collins, Inc., another plaintiff she represents in nearly identical lawsuits. Ms. Kushner's history in this District is similar: she or her predecessor has filed 18 cases in this District so far this year for Malibu Media, and never did bother to file a Notice of Related Cases.  As a result of this tactic, here, as in the Eastern District of California, and Central District of California, multiple Judges were

**MEMORANDUM IN SUPPORT OF JOHN DOE'S OMNIBUS MOTION THAT THE COURT:
(1) SEVER AND DISMISS ALL JOHN DOES OTHER THAN DOE NO. 1; AND
(2) QUASH ALL OUTSTANDING SUBPOENAS**

initially assigned to cases that involve what is essentially the same form complaint, same "technical expert," same claims, and, often times, the exact same copyrighted movies.[6]

By making it a policy never to file Notices of Related Cases, plaintiff's counsel generally tries to fly under the radar, and hedge her bets, by parceling cases out to different Judges.  Given the split in authority, lack of controlling Circuit precedent, and the differing levels of familiarity among Judges with both BitTorrent and these pornographic mass infringement cases, which are a relatively new phenomenon, the advantages to spreading the cases around are obvious.  Plaintiff's counsel hopes that Judges in this District will authorize early discovery without first considering joinder.[7]  If plaintiff files a Notice of Related Cases properly at the outset, plaintiff risks having a single Judge appreciate the full scope of Patrick Collins's abusive activities in the District, and having a single Judge curtail these activities.

All of Ms. Kushner's Malibu Media cases in the Central District appear to be in the process of being transferred to Judge Burns.  The undersigned would respectfully suggest that there would be a substantial savings of Judicial economy if all of the Patrick Collins cases were also transferred to Judge Burns, or another Judge, who could preside over both the Malibu Media and Patrick Collins cases, at least for pre-service litigation.

---

[6] After forcing the issue with Ms. Kushner in three other districts with mixed success in prompting her to act, the undersigned simply stepped in and filed a Notice of Related Cases in the cases pending here, in the Malibu Media cases, on 8/16/12, as allowed under this Districts Local Rule on Notices of Related Cases.  After being retained by a client being sued by Patrick Collins in the Southern District, the undersigned filed a Notice of Related Cases for the Southern District Patrick Collins cases on September 21, 2012.

[7] *See Hard Drive Prod's., Inc. v. Does 1-90*, N.D. Cal. Case No. 5:11-cv-3852-HRL ("simultaneous consideration of the application for early discovery and joinder has become the norm for courts in this district faced with similar cases. See, e.g., Hard Drive Prods. v. Doe, 2011 U.S. Dist. LEXIS 89858 (N.D. Cal. Aug. 12, 2011); Boy Racer v. Does, 2011 U.S. Dist. LEXIS 86746 (N.D. Cal. Aug. 5, 2011); Diabolic Video Prods. v. Does 1-2099, 2011 U.S. Dist. LEXIS 58351 (N.D. Cal. May 31, 2011)").

### III.  JOINDER IS NOT PERMISSIBLE

**(a)     Standard for Joinder**

Federal Rule 20(a)(2) provides that defendants "may be joined" if: "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."  Fed. R. Civ. Proc. 20(a)(2)(emphasis added).  In discussing Ninth Circuit law, one court has explained that "The 'same transaction' requirement of Rule 20 refers to 'similarity in the factual background of a claim; claims that arise out of a systematic pattern of events *and* have a '*very definite* logical relationship.'" *Hubbard v. Hougland*, 2010 U.S. Dist. LEXIS 46184 (E.D. Cal. Apr. 5, 2010) (emphasis added); *citing Bautista v. Los Angeles County*, 216 F.3d 837, 842-843 (9th Cir. 2000).

However, "*even if the test is satisfied, district courts have the discretion to refuse joinder* in the interest of avoiding prejudice and delay, ensuring judicial economy, or safeguarding principles of fundamental fairness." *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521-522 (5th Cir. 2010) (internal citations omitted); *accord* 4-20 Moore's Federal Practice - Civil § 20.02.

**(b)     Majority of Court are Rejecting Plaintiff's "Swarm Joinder" Theory**

Judge McMahon of the Southern District of New York recently addressed plaintiff's swarm joinder theory in similar case, as follows,

> "There is no need for this Court to write another lengthy opinion discussing why plaintiff's theory is wrong.  Rather, I adopt and expressly incorporate into this memorandum order the reasoning of Judge Gibney in *K-Beech* [*Inc. v. John Does 1-85,* No. 3:11-cv468, 2011 U.S. Dist. LEXIS 124581, at *2-3 (E.D. [Va.] Oct. 5, 2011)][8]; Magistrate Judge Spero of the Northern District of California in *Hard Drive Productions, Inc. v. Does 1-*

---

[8] (finding "the mere allegation that defendants used [BitTorrent] to copy and reproduce the Work … on different days and times, *over a three month period*" insufficient to support joinder);

*188*, No. C-11-01566, 860 F. Supp. 2d 1150 (N.D. Cal. August 23, 2011)[9]; several other courts in the Northern District of California, including *Diabolic Video Productions, Inc. v. Does 1-2099*, 10 Civ. 5865, 2011 U.S. Dist. LEXIS 58351, at * 10-11 (N.D. Cal. May 31, 2011); and most especially the comprehensive Report and Recommendation of the Hon. Gary R. Brown, U.S.M.J., that was filed in our sister court, the Eastern District of New York, in *In re: BitTorrent Adult Film Copyright Infringement Cases,* No. 11-cv-3995, 2012 U.S. Dist. LEXIS 61447 (E.D.N.Y. May 1, 2012).[10]

All of the courts on which this Court relies, and whose reasoning I find persuasive, have concluded that where, as here, the plaintiff does no more than assert defendants 'merely commit[ed] the same type of violation in the same way,' it does not satisfy the test for permissive joinder pursuant to Rule 20. . . .what we have here is 245 separate and discrete transactions in which 245 individuals used the same method to access a file via the Internet—no concerted action whatever, and no series of related occurrences—at least, not related in any way except the method that was allegedly used to violate the law." *Digital Sins, Inc., supra,* at p. 2–3.

In arguing that all Does other than Doe No. 1 should not be dismissed for mis-joinder, plaintiff's counsel normally cites to *First Time Videos, LLC v. Does 1-76,* 2011 WL 3586245, N.D. Ill. Case No. 11-cv-3831, 8/16/11, for the proposition that "the

---

[9] (collecting cases)

[10] *See also Boy Racer Inc. v. Does 1-60*, 11-cv-01738-SI, 2011, 2011 U.S. Dist. LEXIS 92994, at *4 (N.D. Cal. Aug. 19, 2011) (finding misjoinder because "Plaintiff [did] not plead facts showing that any particular defendant illegally shared plaintiff's work with any other particular defendant"); *AF Holdings LLC v. Does 1-97*, 2011 U.S. Dist. LEXIS 78636, *4 (N.D. Cal. July 20, 2011) (holding that even though BitTorrent protocols differ from previous peer-to-peer platforms, joinder is improper); *Raw Films, Ltd. v. Does 1-32*, 2011 U.S. Dist. LEXIS 114996, *2-7 (E.D. Va. Oct. 5, 2011); *Patrick Collins, Inc. v. Does 1-58*, U.S. Dist. LEXIS 120235, *2-7 (E.D. Va. Oct. 5, 2011); *Hard Drive Productions, Inc. v. Does 1-30*, 2011 U.S. Dist. LEXIS 119333, *6-10 (E.D. Va. Oct. 17, 2011).

**MEMORANDUM IN SUPPORT OF JOHN DOE'S OMNIBUS MOTION THAT THE COURT:**
**(1) SEVER AND DISMISS ALL JOHN DOES OTHER THAN DOE NO. 1; AND**
**(2) QUASH ALL OUTSTANDING SUBPOENAS**

overwhelming majority of courts have denied as premature motions to sever prior to discovery." ***This observation may have been accurate in August of 2011, but it is no longer true today***.  Notably, another court in the Northern District of Illinois observed on March 30, 2012 that,

> "the Doe defendants contend that joinder of the defendants is improper under Federal Rule of Civil Procedure 20(a)(2). Some courts have rejected those arguments [footnote cites 3 cases, one of which is *First Time Videos, LLC v. Does 1-76*], but ***others have increasingly accepted them and severed the defendants or quashed the subpoenas*** [footnote cites 5 cases].
>
> ***In the face of this stiffening judicial headwind***, the plaintiffs here have adopted a new tactic. . . ." *Pacific Century Int'l., Ltd. v. John Does 1-37*, – F. Supp. 2d –, 2012 WL 1072312  (N.D. Ill. Mar. 30, 2012) Case No. 12-cv-1057, Dkt. No. 23, p. 7 (emphasis added)

In short, across the country, there is a "stiffening judicial headwind" that is severing John Does from mass infringement pornography lawsuits such as this one like leaves on fall day. *See Pacific Century Int'l., Ltd. v. John Does 1-37*, – F. Supp. 2d –, 2012 WL 1072312 (N.D. Ill. Mar. 30, 2012) Case No. 12-cv-1057, Dkt. No. 23 at p. 7.

The leading judicial defender of the increasingly beleaguered minority view[11] that "swarm joinder" is appropriate, at least at the pleading stage, is Judge Beryl Howell of the D.C. District, author of the seminal opinion in *Call of the Wild Movie, LLC v. Does 1-*

---

[11] Although by no means a definitive measure, comparing the Lexis Shepards reports for *Call of the Wild, supra,* (Howell, J.) (decided 3/22/2011) and *Hard Drive Prods., supra,* (decided 8/23/2011) (a leading case on swarm joinder, going the other way, and applying Ninth Circuit law in denying early discovery as to and severing all Does other than Doe No. 1) shows how the tide is turning.  According to Lexis, *Call of the Wild* was "followed" 4 times in 2011 and 4 times in 2012. By contrast, *Hard Drive Prods,* which found for the Does, was "followed" 11 times in 2011 and 16 times so far in 2012.  Similarly, *Call of the Wild* was "criticized" or "distinguished" 4 times in 2011 and 14 times in 2012, while *Hard Drive Prods*. was "criticized" or "distinguished" only 1 time in 2011, and 8 times in 2012.

*1,062*, 770 F. Supp. 332, D.D.C. Case No. 10-cv-455, Dkt. No. 40, 3/22/2011.  Prior to being elevated to the federal bench in 2010, Judge Howell was a lobbyist for the RIAA. The RIAA pioneered this kind of lawsuit between 2003-2008, when it conducted its file sharing litigation campaign against individuals.[12]  Most of plaintiff's usual citations on swarm joinder trace back to *Call of the Wild*.  The nations large ISPs recently asked Judge Howell to change her views on these cases, which she declined to do, but she did certify her denial of the ISPs motion to quash for interlocutory appeal to the D.C. Circuit, in light of the fact that other Judges in her own district, and many in other districts, disagree with her. *AF Holdings LLC v. Does 1-1,058*, 12-cv-0048-BAH, Dkt. 46, 8/6/12.  The D.C. Circuit will thus likely be the first Circuit Court of Appeals to address the issue.

At the heart of the "swarm joinder" issue is whether participation in the same BitTorrent swarm satisfies the "same transaction and occurrence" test under Rule 20. Persuaded by *Call of the Wild*, Judge Randon of the Eastern District of Michigan reasoned that, because of the way BitTorrent works, with people sharing the same file with one another, participation in a BitTorrent peer group necessarily satisfied the "logical relationship" test. *Patrick Collins, Inc. v. John Does 1-21*, 2012 WL 1190840, at *4-5 (E.D. Mich. Apr. 5, 2012).  Judge Randon reasoned, "in the universe of possible transactions, at some point, each Defendant downloaded a piece of the Movie, which had been transferred through a series of uploads and downloads from the Initial Seeder, through other users or directly, to each Defendant, and finally to IPP."[13]  *Id.*

With due respect to Judge Randon, the joinder standard he suggests, and upon which plaintiff seeks to rely, amounts to the Rule 20 equivalent of the game of  "Six

---

[12] http://www.wired.com/threatlevel/2010/05/riaa-bump/;
https://www.eff.org/wp/riaa-v-people-five-years-later;
http://www.techdirt.com/articles/20110329/04174413675/judge-who-said-lumping-together-unrelated-copyright-cases-is-fine-is-former-riaa-lobbyist.shtml

[13] IPP is the name of the company that currently provides the services of Malibu Media's and Patrick Collins's technical expert, Tobias Fieser.

**MEMORANDUM IN SUPPORT OF JOHN DOE'S OMNIBUS MOTION THAT THE COURT:**
**(1) SEVER AND DISMISS ALL JOHN DOES OTHER THAN DOE NO. 1; AND**
**(2) QUASH ALL OUTSTANDING SUBPOENAS**

Degrees of Kevin Bacon".[14]   The idea is that somehow, some way, through an **indeterminate** number of intermediary connections[15] to other peers, each of whom may or not be another Doe Defendant, each Doe Defendant can be linked back to the Initial Seeder (*i.e.*, Kevin Bacon).  And as a result of the fact that every Doe Defendant in the swarm may be linked to the Initial Seeder, it therefore follows that every Doe Defendant can somehow be linked to every other Doe Defendant.  This may be true as a matter of pure logic. But as a practical standard by which to judge whether different individuals, with different factual circumstances, may properly be joined into the same lawsuit, it leaves much to be desired.

More importantly, while the swarm joinder theory, as espoused by Judges Howell and Randon, which involves an **indefinite** number of theoretical connections to join Does together, may meet the "logical relationship" test used by some Circuits, this kind of reasoning would not seem to qualify as the kind of "***very definite*** logical relationship,'" that is necessary to support joinder on this Circuit.  *Hubbard v. Hougland*, 2010 U.S. Dist. LEXIS 46184 (E.D. Cal. Apr. 5, 2010); *citing Bautista v. Los Angeles County*, 216 F.3d 837, 842-843 (9th Cir. 2000) (emphasis added).

**(c)**    **John Does Using BitTorrent Months Apart from One Another Are Not Part of the Same Swarm and Not Part of Same Transaction or Occurrence**

Even if the "swarm joinder" theory were good law, plaintiff's case here would still fail, because the Doe defendants were not part really part of the "same swarm."  In all of the cases Patrick Collins (as well as Malibu Media) have filed in this District, there is a substantial temporal gap, generally of 2–3 months, between the time of the alleged infringing downloads. A review of Exhibit "A" or "C" to any of plaintiff's complaints bears this out. For example, in *Patrick Collins*, 12-cv-1475, John Doe 3 is alleged to have

---

[14] http://en.wikipedia.org/wiki/Six_Degrees_of_Kevin_Bacon

[15] The number of connections could be any number greater than 0: a Defendant might have downloaded directly from the Initial Seeder (i.e., 1 connection), there might be a few people in between, none of whom are other Defendants, there might be an unbroken daisy-chain of Doe defendants leading to the Initial Seeder, or it might require hundreds, or even thousands, etc., of people to make the connection, each of whom may or may not be another Doe defendant.

participated in a swarm transaction by downloading a movie on April 1, 2012.  Then, more than two months later, John Doe No. 1 was supposedly participating in the same transaction when he downloaded a part of that movie on June 2, 2012.  Similarly, in *Malibu Media*,  S.D. Cal. Case No. 12-cv-1135, John Doe No. 35 is alleged to have participated in a swarm transaction and downloaded 11 infringing works on 2/4/2012 at precisely 17:15:53. Over two months later, on 4/11/2012 at 07:52:59, John Doe No. 8 was supposedly participating in that same swarm transaction, when s/he downloaded 16 copyrighted works.  S.D. Cal. Case No. 12-cv-1135, Dkt. No. 1-3.

Simply put, Does who may have shared excerpts of the same file months apart from one another are not part of the "same series of transactions."  The time gap is simply too long.  As Judge Wright found in a detailed order addressing the technical characteristics of BitTorrent in one of Malibu Media's cases in the Central District of California,

>  "The loose proximity of alleged infringements (March 5, 2012-April 12, 2012) does not show that these Defendants participated in the same swarm.  As discussed above, a downloader may log off at any time, including before receiving all the pieces of the copyrighted work. Without evidence that these Does acted in concert, joinder is improper—the Doe Defendants should be severed and dismissed under Federal Rule of Civil Procedure 21." *Malibu Media v. John Does 1-10*, C.D. Cal. Case No. 12-cv-3623-ODW-PJW, docket no. 7, 6/27/12, pp. 5–6; *see, e.g., fn 17, supra.*

At least one Court has gone so far as to hold that the "transactional relatedness" test is only satisfied in online download cases when parties are downloading a file *at the same time.  DigiProtect USA Corp. v. Doe*, 2011 U.S. Dist. LEXIS 109464, 8-9 (S.D.N.Y. Sept. 26, 2011) (***for defendants to be part of same "swarm," a user must have "downloaded the movie from the same website during overlapping times" with another member of the swarm***); *see also Raw Films, Inc. v. Does 1-32*, 2011 WL 6840590, at *2 (N.D. Ga. Dec.

29, 2011) ("Downloading a work as part of a swarm does not constitute 'acting in concert' with one another, particularly when the transactions happen over a long period of time;" time span of 4 months); *Liberty Media Holdings, LLC*, 2011 WL 5190106, at *3 (S.D. Fla. Nov. 1, 2011) (same; ***time span of two months***); *Liberty Media Holdings, LLC v. BitTorrent Swarm,* 2011 WL 5190048, at *2–4 (S.D. Fla. Nov. 1 2011) (same; ***time span of two months***).  Here, plaintiff has not alleged that plaintiff's were downloading files *at the same time* so there really is no "swarm," and therefore no basis for "swarm joinder."

Thus, here, plaintiff's complaint completely undermines its argument that the Does are part of the "same swarm" because the complaint shows that the Does did not download files at the same time, but rather downloaded files months apart from one another.  Even if "swarm joinder" were good law, this, surely, would take the concept too far afield.

**(d)     As Between Multiple Does, Different Factual and Legal Issues Will Predominate**

Each of the individual Doe defendants in this cases is likely to present completely different factual circumstances, which result in a variety of different legal defenses.  *E.g. In re: Adult Film Cases*, at p. 20 (noting the "panoply" of different legal defenses raised by a "half-dozen moving defendants, even at this preliminary stage).  Most notably, each Doe is going to have completely different circumstances and potential defenses on whether or not his or her home wireless network was unsecured, and depending on who may have had access to that network.  Thus, even though there will admittedly be at least one common question of law or fact, on a macro level, the differences between the facts and legal claims applicable to a given Doe outweigh any potential similarities insofar as joinder is concerned.  *Id.*

**(e)     Even if Joinder Were Permissible, the Court Should Still Exercise its Discretion and Sever the Does in Light of Plaintiff's "Abusive Litigation Tactics" and the Burden on the Does and the Courts**

Patrick Collins has a long track record of abusive litigation tactics, both in other cases it has filed nationally, as well as in the specific actions taken by its counsel here, in

-16-

the cases now pending before this Court.  Specifically, the plaintiff: (i) is using the same "settlement negotiators" as other notorious copyright trolls; (ii) using subpoena information to collect on claims that go beyond the complaint;[16] (iii) willfully violating courts' notice of related case rules to try and fly under the radar; (iv) seeking John Doe phone numbers and email addresses despite a court order telling Patrick Collins not to do so anymore; (v) misrepresenting the range of potential damages.  Dec'l. of Morgan E. Pietz, ¶¶ 6–27.

Judge Brown's May 1, 2012, order and recommendation in *In re: Adult Film Cases*—which was specifically addressed to Patrick Collins and Malibu Media, among others—was fairly devastating to Patrick Collins's business model, so Patrick Collins essentially ignored it and carried on with business as usual.  As Judge Brown noted on July 31, 2012, "Less than three months after addressing concerns about potentially abusive litigation tactics by plaintiffs in these actions, this Court is *again* confronted with indicia of improper conduct by plaintiffs' counsel, to wit: plaintiffs' counsel apparently ignored, or tried to circumvent, the very safeguards the undersigned put in place to help prevent unfair litigation tactics while permitting plaintiffs to pursue their claims."  *In re: BitTorrent Adult Film Copyright Infringement Cases,* E.D.N.Y. Case No. 12-cv-1147-JS-GRB, Dkt. No. 9, 7/31/12 (*In re: Adult Film Cases II*) (emphasis in original).  Specifically, in *In re: Adult Film Cases I*, after severing all Does other than Doe No. 1, Judge Brown ordered that any ISP subscriber information *for Doe No. 1* be produced directly to the Court, not to plaintiff's counsel.  **Counsel for Patrick Collins and Malibu Media**, Aaron Kotzker, then went ahead and issued a subpoena for Doe No. 1, directing the information to be produced to the offices of plaintiff's counsel; essentially ignoring this aspect of the Court's order.  Thus, in *In re: Adult Film Cases II,* Judge Brown explained

"This Court's Order cataloged abuses tactics by plaintiffs in related actions against John Doe defendants, and expressed, in

---

[16] This tactic, which Ms. Leemore Kushner, who represents Malibu Media, as well as Patrick Collins, Inc., in several districts in California, has repeated on several occasions, is particularly troubling, *see* Dec'l. of Morgan E. Pietz ¶¶ 14–19 and Exhibit B.

no uncertain terms, this Court's concerns about the conduct of this litigation going forward, particularly in light of the serious questions about plaintiffs ability to properly identify defendants based solely upon their IP addresses. ***As such, it is astonishing that counsel failed to observe the precautions established in the Order. On this record, it is difficult to ascertain whether this apparent failure was deliberate, or simply the result of gross inattention***." *In re: Adult Film Cases II,* at p. 5.

For all of the reasons noted above, including Patrick Collins's "abusive litigation tactics," as detailed in the Declaration of Morgan E. Pietz, the Court should exercise its discretion and sever the Does, even if it finds joinder permissible. *See Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521-522 (5th Cir. 2010) (internal citations omitted) (court has discretion to deny permissive joinder even when test is met); *Next Phase Distrib., Inc. v. Does 1-27*, 2012 U.S. Dist. LEXIS 107648, 11-12 (S.D.N.Y. July 31, 2012) (addressing split in authority on swarm joinder, but severing Does as a matter of the Court's discretion for the reasons set forth in *In re: Adult Film Cases*); *Next Phase Distribution*, 2012 WL 3117182, at *4-5; *SBO Pictures, Inc. v. Does 1-20*, No. 12 Civ. 3925 (SAS), 2012 WL 2304253, (S.D.N.Y. June 18, 2012) at *2; *see also Hard Drive Prods., Inc. v. Does 1-188*, 809 F. Supp. 2d 1150, 1164 (N.D. Cal. 2011).

There is also one more excellent reason for the Court to exercise its discretion and sever the Does: ***filing fees***.  The *In re: Adult Film Cases* court recently noted that it appeared that just in that district alone, three plaintiffs had avoided paying over $100,000 in filing fees.   "If the reported estimates that hundreds of thousands of [John Doe] defendants [in mass infringement cases] have been sued nationwide, plaintiffs in similar actions may be evading millions of dollars in filing fees annually.  Nationwide, these plaintiffs have availed themselves of the resources of the court system on a scale rarely seen.  It seems improper that they should profit without paying statutorily required fees." *In re: Adult Film Cases, supra*, p. 23.

**MEMORANDUM IN SUPPORT OF JOHN DOE'S OMNIBUS MOTION THAT THE COURT:**
**(1) SEVER AND DISMISS ALL JOHN DOES OTHER THAN DOE NO. 1; AND**
**(2) QUASH ALL OUTSTANDING SUBPOENAS**

Here, the same is also true.  Based on the undersigned's calculations, so far in 2012, as of August 14, 2012, in the State of California alone, Malibu Media had sued 867 Does in 61 cases.  Thus, assuming a $350 filing fee per case, instead of paying $303,450 in filing fees to the Courts to sue each of those people individually, Malibu Media has paid only $21,350, resulting in a net loss to the Judicial Branch *in California alone* of $282,100. Nationwide, by repeatedly mis-joining approximately 4,646 Does in only 287 actions (as of August 14, 2012) it would appear that *Malibu Media has cheated the Federal Judiciary out of a staggering $1,372,700.00 in filing fees.* See Dec'l. of Morgan E. Pietz, ¶ 26, <u>Exhibit A</u>.  The same is also true for Patrick Collins; thousands of Does; only 250 cases.

## IV.  THE SUBPOENAS SHOULD BE QUASHED

**(a)   If the Court Severs the Does, it Should Dismiss them Without Prejudice and Quash the Subpoenas Seeking Their Identifying Information**

After courts sever and "drop"/dismiss without prejudice[17] the mis-joined Doe defendants, courts also quash the outstanding subpoenas seeking to identify those Doe Defendants. *E.g., In re: BitTorrent Adult Film Copyright Infringement Cases,* 2012 U.S. Dist. LEXIS 61447 (E.D.N.Y. May 1, 2012) Case No. CV-11-3995-DRH-GRB, Dkt. No. 39, pp. 23-25; *Digital Sins, Inc. v. John Does 1-245,* S.D.N.Y. Case No. 11-cv-8170, Dkt. No. 18, 5/15/12, p. 7 ("Because I have severed and dismissed all of the claims against the defendants, I hereby, *sua sponte,* quash any subpoena that may be outstanding to any Internet service provider seeking information about the identity of any John Doe other than John Doe 1.  Plaintiff is directed to send a copy of this order within 24 hours of its issuance to any and every internet service provider who has been served with a subpoena for any information concerning any other John Doe defendant.").  To do otherwise would only encourage plaintiffs to try and avoid paying statutorily required filing fees by mis-joining

---

[17] Undoubtedly, Fed. R. Civ. Proc. 21 prohibits dismissal of an *action* as the remedy for misjoinder.  But, in practical effect, "dropping" given Does from an action, while still keeping Doe No. 1 in the case, results in a dismissal without prejudice as to the severed Does.  Many cases have adopted this approach.  *E.g., In re: Adult Film Cases, supra.*

as many Does as possible, and then forcing the Does to file, and the Court to hear, motions for severance.

**(b)     The Court Should Have Denied Plaintiff's <u>Unopposed</u> Requests for Early Discovery**

      **(1)     <u>Plaintiff Has Identified no Discovery Plan Making it "Very Likely" that the Requested Subpoenas Will Identify the True Doe Defendants as Required by *Gillespie*</u>**

Just as courts are increasingly handling these kinds of cases by considering the propriety of mass joinder at the early discovery stage,[18] so too are many other courts pausing to consider that the subpoenas plaintiffs seek to issue are not, ***by themselves***, "very likely" to reveal the identities of the actual defendants, as required under *Gillespie v. Civiletti.  E.g., Hard Drive Productions, Inc. v. Does 1-188*, 809 F. Supp. 2d 1150 (N.D. Cal. August 23, 2011) ("*Hard Drive Prods.*") (denying early discovery because "It is abundantly clear that plaintiff's requested discovery is not '***very likely***' to reveal the identities of the Doe defendants."); *citing Gillespie v. Civiletti*, 629 F.2d 637, 642–43 (9th Cir. 1980); *see also, e.g., AF Holdings LLC v. Does 1-96*, N.D. Cal. No. 11-cv-3335-JSC, Dkt. No. 14, 9/27/11, p. 6 ("*AF Holdings*") (denying requested early discovery because it was not "***very likely*** to enable Plaintiff to identify the doe defendants."); *AF Holdings, LLC v. John Doe*, D. Min. Case No. 12-cv-1445, Dkt. No. 7, 7/5/12 (denying early discovery because "the requested discovery was '***not very likely***' to reveal the identity of the alleged infringer").  To put it another way, plaintiff presents no plan for how it intends to go from indentifying ISP subscribers to identifying actual John Doe defendants; and in reality, plaintiff does not care to do so.  It simply wants to extort "settlements" from ISP

---

[18] *Hard Drive Prod's., Inc. v. Does 1-90*, N.D. Cal. Case No. 5:11-cv-3852-HRL (severing Does at early discovery stage and noting "simultaneous consideration of the application for early discovery and joinder has become the norm for courts in this district faced with similar cases. See, e.g., Hard Drive Prods. v. Doe, 2011 U.S. Dist. LEXIS 89858 (N.D. Cal. Aug. 12, 2011); Boy Racer v. Does, 2011 U.S. Dist. LEXIS 86746 (N.D. Cal. Aug. 5, 2011); Diabolic Video Prods. v. Does 1-2099, 2011 U.S. Dist. LEXIS 58351 (N.D. Cal. May 31, 2011)").

subscribers, upon threat of publicly "naming" them in a lawsuit alleging they illegally downloaded pornography, regardless of whether they committed the alleged infringement or not.

>       (2)     The Early Discovery Request Should Also Have Failed the Requisite First Amendment Balancing Test Mandated by *Semitool*

Accepting, *arguendo*, plaintiff's assumption that the ISP subscribers it seeks to identify are the actual John Doe defendants, the subpoenas should still be quashed.

>       (A)     *Online File Sharing Protected by Limited First Amendment Right to Anonymity*

One issue the plaintiff generally tries to skirt in its unopposed papers seeking leave to issue subpoenas to the ISPs is the not immediately obvious point that the subpoenas plaintiff seeks leave to issue to the ISPs, which would identify file sharers, implicate First Amendment rights. Courts routinely hold that in online file sharing cases, before third party subpoenas can be issued, the Does' limited First Amendment right to anonymity must be considered. *Sony Music Entm't Inc. v. Does 1–40*, 326 F. Supp. 2d 556, 566 (S.D.N.Y. 2004) (surveying case law and concluding "that the use of P2P file copying networks to download, distribute, or make sound recordings available qualifies as speech entitled to First Amendment protection."); *Call of the Wild Movie, LLC v. Does 1-1,062*, D.D.C. Case No. CV-10-455, Dkt. No. 40, 3/22/2011, p. 21 (Howell, J.) ("file-sharers are engaged in expressive activity, on some level, when they share files on BitTorrent, and their First Amendment rights must be considered before the Court allows the plaintiffs to override the putative defendants anonymity by compelling production of the defendants' identifying information."). While many courts rightly conclude that file sharing is not really pure speech, and thus afforded only ***very limited*** First Amendment protection, *on the facts here*, the plaintiff's need for civil discovery should not trump the Does' limited First Amendment rights.

(B)    *The Four __Semitool__ Factors*

Where plaintiffs have sought to identify anonymous John Doe defendants in online file-sharing cases through the use of third party subpoenas, courts have generally applied four factors—the so-called *Semitool* factors to strike the requisite balance.

In considering whether a mass infringement plaintiff's purported need for civil discovery should override the Does' Constitutional rights to anonymity, Courts generally apply four factors, which are referred to in cases as the *Semitool* factors or the *Sony Music* factors. [19]   Courts consider whether: (1) the plaintiff can identify the missing party with sufficient specificity such that the Court can determine that defendant is a real person or entity who could be sued in federal court; (2) the plaintiff has identified all previous steps taken to locate the elusive defendant; (3) the plaintiff's suit against defendant could withstand a motion to dismiss; and (4) the plaintiff has demonstrated that there is a reasonable likelihood of being able to identify the defendant through discovery such that service of process would be possible. *Patrick Collins, Inc. v. Doe*, 2012 U.S. Dist. LEXIS 36232 (D. Ariz. Mar. 19, 2012); *Columbia Ins. Co. v. seescandy.com*, 185 F.R.D. 573, 578-80 (N.D. Cal. 1999); *Sony Music Entm't Inc. v. Does 1–40*, 326 F. Supp. 2d 556, 566 (S.D.N.Y. 2004).

(C)    *In Performing the __Semitool__ Analysis the Court should have Concluded that the Complaint Could not Withstand a Hypothetical Motion to Dismiss __Does Other than Doe No. 1 for Misjoinder__*

Since a First Amendment right, albeit a very limited one, is at stake, and particularly since motions seeking leave to identify Does will almost always be unopposed, *Semitool* requires that Courts pause to consider whether the lawsuit for which discovery is sought has any merit.  While plaintiff may be able to state a claim for copyright infringement based on the allegations in the complaint (, many courts have held that it is appropriate, ***at the early discovery stage***, to consider, as a part of this analysis, whether the complaint could withstand a motion to dismiss Does other than Doe No. 1 for misjoinder. *E.g., Hard*

---

[19] The Ninth Circuit's *Semitool* factors largely track with the Second Circuit's *Sony Music* factors.

*Drive Prod's., Inc. v. Does 1-90*, N.D. Cal. Case No. 5:11-cv-3852-HRL (severing Does at early discovery stage and noting "simultaneous consideration of the application for early discovery and joinder has become the norm for courts in this district faced with similar cases. See, e.g., Hard Drive Prods. v. Doe, 2011 U.S. Dist. LEXIS 89858 (N.D. Cal. Aug. 12, 2011); Boy Racer v. Does, 2011 U.S. Dist. LEXIS 86746 (N.D. Cal. Aug. 5, 2011); Diabolic Video Prods. v. Does 1-2099, 2011 U.S. Dist. LEXIS 58351 (N.D. Cal. May 31, 2011)").

For all of the reasons above, which will not be repeated, the complaint suffers from a defect in joinder, so it should not have withstood a hypothetical motion to dismiss *Does other than Doe No. 1 for misjoinder* at the early discovery stage.

The reason the undersigned sought leave to file a motion for reconsideration of the decision authorizing early discovery in several of the Malibu Media cases is that until courts routinely begin to analyze joinder at the early discovery stage, as the Northern District of California does, these lawsuits will proliferate.

(D)     *In Performing the <u>Semitool</u> Analysis, the Fact that Plaintiff Rarely if Ever Serves Anyone Should Have Weighed Against it*

With certain vexatious plaintiffs such as the ones at issue here, after Courts start seeing them appear over and over again asking for the same kinds of early discovery, only to then dismiss the case at or near the service deadline, Courts start to wonder, is the discovery requested really "reasonably likely" to effectuate service of a complaint?  Some courts have taken notice of plaintiff's disinclination to actually do any litigating of the hundreds of complaints they file.

As one court noted, "it is evident that expedited discovery will not lead to identification of the Doe defendants or service of process. Indeed, the fact that no defendant has ever been served in one of these mass copyright cases belies any effort by plaintiff to allege that the discovery will lead to identification of and service on the Doe defendants." *Hard Drive Prods.*, *supra*, at p. 11 (emphasis added).

Although the undersigned has not yet run the numbers for Patrick Collins in the same way as has been done for Malibu Media (333 cases filed, almost half of which are over 120-days old, against approximately 5,400 Does, and a grand total of four people served, nationwide, in two cases, as of September 19, 2012) there is little reason to doubt the numbers are much different.  The undersigned challenges Patrick Collins to state under penalty of perjury in its opposition how many John Does it has named, how many of those it has served, how many of those were unrepresented, and how many cases it has pursued beyond default judgment stage?  A refusal to answer these questions should speak volumes.

## V.  CONCLUSION

Judge McMahon of New York's Southern District aptly concluded her order severing Does and quashing subpoenas with, "I am second to none in my dismay at the theft of copyrighted material that occurs every day on the Internet.  However, there is a right way to litigate and a wrong way to litigate, and so far this way strikes me as the wrong way." *Digital Sins, Inc.*, *supra*, at p. 8.  The same can be said here.

For all of the foregoing reasons, the Moving Parties respectfully request that the Court sever all Does other than Doe No. 1 in this action, and in each related action filed by Malibu Media currently pending before this Court.  The Moving Parties also request that all outstanding subpoenas be quashed for the severed Does, and that Malibu Media be ordered to comply with Judge Brown's "sensible protocol" in the future.

DATED: September 21, 2012

Respectfully submitted,

_/s/ Morgan E. Pietz_____

Morgan E. Pietz (Cal. Bar No. 260629)
THE PIETZ LAW FIRM
3770 Highland Ave., Ste. 206
Manhattan Beach, CA 90266
mpietz@pietzlawfirm.com
Telephone:   (310) 424-5557
Facsimile:    (310) 546-5301

Attorney for: Putative John Doe "X" in
                      3:12-cv-1475-CAB-WMC


### CERTIFICATE OF SERVICE

I hereby certify that on September 21, 2012, the above document was submitted to the CM/ECF system, which sent notification of such filing(s) to the plaintiff Malibu Media, LLC, which is registered for electronic service.

Check if Applicable:

[   ]    Copies of these documents were also served via U.S. Mail, on this date, to the following parties, who are not registered for electronic service:

N/A


DATED: September 21, 2012            THE PIETZ LAW FIRM

                                     /s/ Morgan E. Pietz
                                     Morgan E. Pietz
                                     THE PIETZ LAW FIRM
                                     Attorney for Putative John Doe(s)
                                     E-mail: mpietz@pietzlawfirm.com

**MEMORANDUM IN SUPPORT OF JOHN DOE'S OMNIBUS MOTION THAT THE COURT:**
**(1) SEVER AND DISMISS ALL JOHN DOES OTHER THAN DOE NO. 1; AND**
**(2) QUASH ALL OUTSTANDING SUBPOENAS**