Leemore Kushner (SBN 221969)
KUSHNER LAW GROUP
801 North Citrus Avenue
Los Angeles, California 90038
Telephone:  (323) 515-7894
Facsimile:  (323) 544-8170
Email: lkushner@kushnerlawgroup.com

Attorneys for Patrick Collins, Inc.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK COLLINS, INC., a California corporation,<br><br>   Plaintiff,<br><br>  v.<br><br>JOHN DOES 1 through 12,<br><br>   Defendants. | Case No. 3:12-cv-1475-GPC-BGS<br><br>**OPPOSITION TO PUTATIVE DOE DEFENDANT'S MOTION TO SEVER AND DISMISS ALL JOHN DOES OTHER THAN DOE NO. 1 AND MOTION TO QUASH SUBPOENAS**<br><br>Date:  November 30, 2012<br>Time: 1:30 p.m.<br>Place: TBD |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION…………………..……………………………..……………………1

II.   LEGAL STANDARD………………………………………………………...4

III.  OVERVIEW OF BITTORRENT TECHNOLOGY…………………………….4

IV.  THE COURT SHOULD NOT SEVER ANY OF THE DEFENDANTS FROM THIS CASE…………………………………………………………...6

    A. Summary of Argument……………………………………………6

    B. The Infringement Occurred Through a Series of Transactions and Plaintiff has Pled That Defendants Are Jointly and Severally Liable…….9

        1.   Series of Transactions or Occurrences……………………….9

        2.   The Joinder Rule Does Not Require Direct Interaction………….11

        3.   Plaintiff Properly Pled Joint and Several Liability………………12

    C. There Are Common Issues of Fact and Law……………………………13

    D. The Law of Joinder Does Not Require Temporal Overlap……………...13

    E. Joinder Promotes Judicial Efficiency and is Not Prejudicial…………..15

    F. Defendant Has Not Identified a Single Abusive Litigation Tactic That Would Merit Severance……………………………………………16

        1.   Plaintiff Is Not Engaged In Improper Settlement Tactics………...16

        2.   Defendant's Counsel Was *Not* Subjected to Any Abusive Tactics.18

V.   THE SUBPOENAS SHOULD NOT BE QUASHED……………………….20

    A. Legal Standard…………………………………………………...20

    B. The Subpoena Seeks Relevant Information That Is Likely To Identify The Infringer………………………………………………21

    C. The Doe Defendants Do Not Have a First Amendment Right to Proceed Anonymously…………………………………………………23

    D. Misjoinder Is Not a Sufficient Basis to Quash the Subpoenas…………25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

VI. CONCLUSION.................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Achte/Neunte Boll Kino Beteiligungs GMBH & Co, KG v. Does 1-4,577*
2010 U.S. Dist. LEXIS 94594, at *10 n.2 (D.D.C. Sept. 10, 2010) ...................23, 25

*AF Holdings LLC v. Does 1-1,058*
2012 WL 3204917 at *13 (D.D.C. August 6, 2012) ................................................15

*Arista Records, LLC v. Does 1-19,*
551 F.Supp.2d 1, 11 (D.D.C. 2008) ................................................................10, 23

*Ashcroft v. Iqbal,*
556 U.S. 662, 129 S.Ct. 1937 (2009) ....................................................................2

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544, 127 S.Ct. 1955 (2007) ....................................................................2

*Bravado Int'l Group Merch. Servs. v. Cha,*
2010 WL 2650432 at *4 (C.D.Cal. June 30, 2010) ..................................................9

*Call of the Wild Movie v. Does 1-1062,*
770 F.Supp.2d 332, 343 (D.D.C. 2011)........................................................9, 13, 15

*Charter Communications, Inc., Subpoena Enforcement Matter*
393 F.3d 771, 775 n. 3 (8th Cir. 2005) ...........................................................3

*Columbia Pictures, Inc. v. Bunnell*
245 F.R.D. 443, 451-52 (C.D.Cal. 2007) ...............................................................24

*Digital Sin, Inc. v. Dos 1-27.*
2012 WL 2036035 at *1 (S.D.N.Y. June 6, 2012) ....................................................7

*Digital Sin, Inc. v. Dos 1-176.*
279 F.R.D. 239, 244 (S.D.N.Y. 2012) ....................................................................8

*Disparte v. Corp. Exec. Bd.,*
223 F.R.D. 7, 10 (D.D.C. 2004) ...........................................................................10

*Doe v. S.E.C.*
  2011 WL 4593181 at *3 (N.D.Cal. Oct. 4, 2011) ..................................................24

*Elektra Entm't Group, Inc. v. Does 1-9*
  No. 04-2289, 2004 WL 2095581, at *4-5 (S.D.N.Y. Sept. 8, 2004) ........................23

*First Time Videos, LLC v. Does 1-95,*
  2011 WL 4724882 at *6 (N.D.Cal. Oct. 7, 2011) ..............................................8, 14

*Ginett v. Computer Task Group, Inc.,*
  962 F.2d 1085, 1094 (2d Cir. 1992) ...........................................................8

*Harper & Row Publishers, Inc. v. Nat'l Enters.*
  471 U.S. 539, 560 (1985) .......................................................................24

*Hard Drive Prods. v. Does 1-188*
  809 F.Supp.2d 1150, 1160 (N.D.Cal. 2011) ...................................................1

*K-Beech, Inc. v. Does 1-31*
  2012 WL 1431652 (D. Md. Apr. 24, 2012)....................................................14

*League to Save Lake Tahoe v. Tahoe Reg'l Planning Agency,*
  558 F.2d 914, 917 (9th Cir. 1997) ............................................................2

*Liberty Media Holdings, LLC v. Does 1-62,*
  2012 WL 628309 (S.D.Cal. Feb. 24, 2012)............................................*passim*

*Malibu Media, LLC v. Does 1-5*
  2012 WL 3641291 (S.D.N.Y. Aug. 24, 2012)................................................13

*Malibu Media, LLC v. Does 1-9*
  Case No. 8:12-cv-00669-SDM-AEP, Dkt 25 at p. 7 (M.D.Fla. July 6, 2012) ..........18

*Malibu Media, LLC v. Does 1-13*
  2012 WL 2325588 (E.D.N.Y. June 19, 2012) ...............................................23

*Malibu Media, LLC v. Does 1-14*
  Civ. Action No. 12-00764 (BAH), Docket 14 (D.D.C. July 25, 2012) ................3, 24

*Malibu Media, LLC v. Does 1-25*
  2012 WL 2367555 at *3 (S.D.Cal. June 21, 2012)....................................*passim*

*Marek v. Chesny*
    473 U.S. 1, 11 (1985)................................................................17

*OpenMind Solutions, Inc. v. Does 1-39*,
    2011 WL 4715200 (N.D. Cal. 2011) ..................................*passim*

*Patrick Collins, Inc. v. John Does 1-9*,
    2012 WL 4321718 at *5 (C.D.Ill. Sept.18, 2012) ....................3

*Patrick Collins, Inc. v. John Does 1-54*,
    2012 WL 911432 (D.Ariz. Mar. 19, 2012)..........................17

*Patrick Collins, Inc. v. John Does 1-21*,
    2012 WL 1190840 (E.D. Mich. Apr. 5, 2012) ................*passim*

*Patrick Collins, Inc. v. John Does 34-51*,
    2012 WL 1190840 (E.D. Mich. Apr. 5, 2012) ......................20

*Patrick Collins, Inc. v. John Does 1-2590*,
    2011 WL 4407172 (N.D.Cal. 2011) ....................................9

*Raw Films, Ltd. v. John Does 1-15*,
    2012 WL 1019067 (E.D. Pa. Mar. 26, 2012)   ................11, 22

*Sony Music Entertainment v. Does 1-40*
    326 F. Supp. 2d 556, 567 (S.D.N.Y. 2004) ........................23

*Sosa v. DirectTV*
    437 F. 3d 923, 937 (9th Cir. 2006) ....................................17

*Third Degree Films, Inc. v. Does 1-178*
    2012 WL 3763649 (N.D.Cal. Aug. 29, 2012) ......................17

*United Mine Workers of Am. v. Gibbs*,
    383 U.S. 715, 724 (1966)..................................................4

*United States v. Mississippi*
    380 U.S. 128 (1965)........................................................11

*West Bay One, Inc. v. Does 1-1653*,
    270 F.R.D. 13, 16 n.4 (D.D.C. July 2, 2010)......................23

**Rules**

Fed. R. Civ. P. 20................................................................................*passim*

Fed. R. Civ. P. 26.................................................................................21

Fed. R. Civ. P. 45.................................................................................20

1  I.     **INTRODUCTION**

2        The issue of joinder has been raised in several similar cases pending in the

3  Southern District of California, and this district has repeatedly found that joinder is

4  proper in cases such as this where the defendants participated in the same swarm

5  and downloaded and subsequently shared the same copyrighted work.  *See Liberty*

6  *Media Holdings*, 2012 WL 628309 at *4-7 (S.D.Cal. Feb. 24, 2012); *Malibu Media,*

7  *LLC v. John Does 1-25*, 2012 WL 2367555 at *3 (S.D.Cal. Jun 25, 2012).  Indeed,

8  the defendants' relatedness arises not merely because of their common use of the

9  BitTorrent protocol, but because each Defendant affirmatively chose to download

10  the *same* Torrent file that was created by the *same* initial seeder, intending to utilize

11  other users' computers to download pieces of the *same* movie or set of movies, and

12  allow his or her own computer to be used in the infringement by other peers and

13  defendants in the *same* swarm.

14        In deciding that joinder is proper, this court analyzed several of the cases

15  upon which Defendant relies, including *Hard Drive Prods. v. Does 1-188*[1] and

16  *Diabolic Video Prods. v. Does 1-2099*, and found those decisions to be

17  unpersuasive. *See, e.g., Liberty Media Holdings*, 2012 WL 628309 at *4-7 (S.D.Cal.

18  Feb. 24, 2012).  Instead, this Court recognized that:

19
20          [c]ases involving BitTorrent technology raise a new and distinct
           method of alleged copyright infringement that was not possible with
21          the earlier P2P technology, mainly that BitTorent users collectively
           share the same exact file by each contributing a small piece of the file
22          to the user downloading the file.  Furthermore, unlike the earlier P2P
           technology, the BitTorrent file-sharing protocol makes every
23

24  _____

25  [1] This Court distinguished *Hard Drive Prods. v. Does 1-188*, 809 F.Supp.2d 1150, 1160 (N.D.Cal. 2011), where it was unclear whether all one hundred eighty-eight
26  Doe defendants participated in the same swarm.  *Liberty Media*, 2012 WL 628309 at *7.  In this case, as in *Liberty Media*, Plaintiff alleges that all defendants were
27  members of the same swarm.  Complaint, Ex. A.

28                                          1

downloader also an uploader of the illegally transferred file. This distinguishes BitTorrent cases from the earlier P2P cases. Given this unique theory of copyright infringement, it is possible that BitTorrent users identified with the alleged illegal sharing of the same file are 'logically related' and are 'acting in concert.'

*Liberty Media*, 2012 WL 628309 at *7. This Court thus found that the Doe defendants were logically related and that Plaintiff's claims against them stemmed from the same transaction or occurrence. *Id.*; *see also*, *Malibu Media v. John Does 1-25*, 2012 WL 2367555 at *3 (citing *Liberty Media* and finding joinder is proper).[2]

Defendant's motion largely centers on the notion that Plaintiff is engaged in abusive settlement tactics by, among other things, employing settlement negotiators who, upon receiving the subscribers' identities from the Internet Service Providers, purportedly conduct a "shake down" and pressure innocent persons into settling. This is blatantly untrue and, as discussed below, without a shred of factual support.

Defendant also contends that the supposed "nationwide blizzard of civil

---

[2] Judge Marilyn Huff recently ordered severance in a similar case – *Patrick Collins v. John Does 1-9*, Case No. 3:!2-cv-1436-H-MDD, Docket no. 23 (S.D.Cal. Nov. 8, 2012) – however, Judge Huff's opinion appears to rely on the notion that Plaintiff's joinder theory is based solely on the fact that the Doe defendants used the same peer-to-peer network to download the same files. *Id.* at p. 4, lines 23-25 (defining Plaintiff's swarm joinder theory as the "use of the same peer-to-peer network to download the same files."). But as discussed herein, the joinder analysis is not as simple as that. Indeed, the nature of the BitTorrent protocol, which is detailed in this brief, makes it very likely – and certainly plausible – that the Defendants herein acted in concert. Moreover, unlike in this case where Plaintiff specifically alleged in the Complaint that the defendants acted in concert (Complaint, ¶ 10), in all of the cases cited on page 5, lines 9-24 of Judge Huff's opinion, there was no allegation in the complaints that the defendants acted in concert. *See id.*, p. 5, lines 9-24. Accordingly, under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009), Plaintiff's allegation in the Complaint that the defendants acted in concert must be accepted as true. In light of the Ninth Circuit's mandate that the joinder rules should be construed liberally, Plaintiff respectfully submits that Judge Huff's opinion – which is not binding on this Court – should not be followed. *See League to Save Lake Tahoe v. Tahoe Regional Planning Agency*, 558 F.2d 914, 917 (9th Cir. 1977) ("[P]ermissive joinder is to be construed liberally in order to promote trial convenience and to expedite the final determination of disputes, thereby preventing multiple lawsuits.").

2

actions" is indicative of Plaintiff's abuse of the litigation process.  But as the Central District of Illinois stated in response to a similar argument:

> **One person's cottage industry in harassing lawsuits is another person's vigilant defense of property rights**. … The proliferation of these types of lawsuits would be expected given the alleged infringement by thousands of people.  The volume of lawsuits alone does not indicate any impropriety. ¶ The fact that [Plaintiff], and others, may settle these suits quickly also does not indicate any wrongdoing.  **Settlement of civil disputes is generally a positive outcome, not a negative one.**

*Patrick Collins, Inc. v. John Does 1-9*, 2012 WL 4321718 at *5 (C.D.Ill. Sept. 18, 2012) (emphasis added).  The fact that Plaintiff has brought so many suits is not an indication that Plaintiff is misusing the legal process; rather, it is indicative of the rampant infringement occurring throughout the country.  Plaintiff's motivation for bringing these suits is to hold the infringers liable for their theft and, by so doing, to deter the future theft of its movies.  If there were an easier way to stop the infringement, Plaintiff would immediately pursue it.

At this stage of the litigation, Plaintiff has no option but to file suit against the owners of IP addresses to obtain the infringers' identities.  Indeed, as a practical matter, "copyright owners cannot deter unlawful peer-to-peer file transfers unless they can learn the identities of persons engaged in that activity." *Charter Communications, Inc., Subpoena Enforcement Matter*, 393 F.3d 771, 775 n. 3 (8th Cir. 2005). "By filing this lawsuit against unknown putative defendants and using the subpoena power to learn the identity of internet service customers who infringe, copyright owners are able to take steps to protect their interests, seek compensation for their misappropriated property, and stop infringement." *Malibu Media, LLC v. John Does 1-14*, Civ. Action No. 12-00764 (BAH), Docket 14 (D.D.C. July 25, 2012).  As discussed in more detail below, Defendant's Motion does not provide the Court with any sufficient basis to sever the case or quash the subpoenas, and their

1   motion should, therefore, be denied.

2   II.   **LEGAL STANDARD**

3        The Supreme Court has expressly stated that "[j]oinder of claims, parties and

4   remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs,* 383 U.S.

5   715, 724, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).  Federal Rule of Civil Procedure 20

6   provides that multiple defendants may be joined in a single action if: (1) any right to

7   relief is asserted against them jointly or severally, or in the alternative, the right to

8   relief arises out of the same transaction, occurrence, or series of transactions or

9   occurrences, and (2) any question of law or fact is common to all defendants.

10  Fed.R.Civ.P 20(a)(2).  When applying the joinder test, courts should "[s]tart with

11  the premise that Rule 20…is to be construed liberally in order to promote trial

12  convenience and…prevent multiple lawsuits." *League to Save Lake Tahoe v. Tahoe*

13  *Regional Planning Agency*, 558 F.2d 914, 917 (9th Cir. 1977).

14       While a plaintiff bears the burden of establishing that joinder of defendants is

15  proper, in assessing whether the requirements of Rule 20(a)(2) are met, courts must

16  accept the factual allegations in plaintiff's complaint are true. Ultimately, federal

17  courts should entertain the "broadest possible scope of action consistent with

18  fairness to the parties." *United Mine Workers*, 383 U.S. at 724.  Thus, "joinder of

19  claims, parties and remedies is strongly encouraged." *Id.*

20  III.   **OVERVIEW OF BITTORRENT TECHNOLOGY**

21       Recently, in *Patrick Collins, Inc. v. Does 1-21*, No. 11 Civ. 15232, 2012 WL

22  1190840 (E.D.Mich. Apr. 5, 2012), Magistrate Judge Mark A. Randon of the

23  Eastern District of Michigan thoroughly analyzed the facts in a near-identical case,

24  expanding substantial effort to understand BitTorrent technology and the allegations

25  in the complaint.  The court acknowledged that the file sharing process begins when

26  an "initial seeder" makes available a file representing a complete copy of the work

27  to be distributed (*e.g.*, the works at issue herein).  The initial seeder shares the file

28

through a "client program" that he has downloaded onto his computer and that is able to access the BitTorrent protocol.  The file is broken into a number of "pieces," each of which is assigned a unique "hash identifier," meaning a randomly generated string of numbers and letters.  *Id.* at *2.  A "Torrent file" is also created at this stage. The Torrent file contains information about the number and size of the pieces and the hash identifiers unique to each piece.  *Id.*  The Torrent file also contains the address of a tracker, which will serve to coordinate among all users who download the same torrent file.  *See id.* at *3-4

When another user, or "peer," downloads the Torrent file, the tracker directs the peer's client program to the location of other BitTorrent users who have downloaded pieces of – or in the case of the initial seeder, simply possess – the desired file.[3]  *Id.* at *3.  Thus, the first person to download the Torrent file after it is created will download pieces only from the initial seeder. *Id.* at *2. After a peer's client program downloads a piece, it is stored locally on the peer's computer. *Id.* When the peer has downloaded all of the pieces of the desired file, the pieces will be reassembled into a complete copy of the original file and will be stored on the peer's computer for use. *Id.* at *3.

Notably, unless a peer has affirmatively inhibited his uploading capability, as soon as the peer downloads a piece, the piece automatically becomes available for upload to other users of the same Torrent file. *Id.* at *4. When a peer has downloaded all pieces of a file, the peer becomes a new "seeder" and will continue to make pieces of the file available for upload as long as his client program remains open and he does not take steps to prevent such uploading from occurring. *See id.* at

---

[3] Unlike with older methods of peer-to-peer file-sharing such as Napster and LimeWire, BitTorrent does not require peers to use the same client program as each other or the initial seeder.

*2. The group of peers that downloads and uploads pieces of a given file from each other, from seeders, and from the initial seeder is referred to as a "swarm." *Id.* at *3. The innovation of the BitTorrent protocol is that "[a]t any given moment, a peer may be simultaneously uploading [pieces to] and downloading pieces from ... many different peers within the same swarm." *Id.* at *2. The ability of a peer to download pieces of a file simultaneously from any number of other members of his swarm increases the likelihood that he will be able to utilize the entirety of his downloading bandwidth while decreasing the uploading bandwidth that any given member of the swarm will be required to sacrifice. The protocol, in short, is highly efficient for its users.

The efficacy of BitTorrent is therefore dependent on users sharing the pieces of a file they have already downloaded. *See id* . at *4. To this end, BitTorrent has a built-in "tit-for-tat" incentive system that punishes users – by means of a slower download speed – who inhibit or are otherwise restricted in their uploading capability. *See* Bram Cohen, *Incentives Build Robustness in BitTorrent,* at 3–4 (May 22, 2003), available at http://www.ittc.ku .edu/~ niehaus/classes/750–s06/documents/BT–description.pdf.

## IV.    THE COURT SHOULD NOT SEVER ANY OF THE DEFENDANTS FROM THIS CASE

### A.    Summary of Argument

Plaintiff acknowledges that district courts both within the Ninth Circuit and across the nation have split on whether joinder of defendants is warranted under the instant circumstances.  The central dispute among these courts has been whether the participation of defendants in the same swarm constitutes "the same transaction, occurrence, or series of transactions or occurrences" for purposes of the joinder rule. But the Southern District of California has held that joinder is proper in cases such as this where the defendants participated in the same swarm and downloaded and

1   subsequently shared the same copyrighted work.  *See Liberty Media Holdings*, 2012

2   WL 628309 at *4-7; *Malibu Media, LLC v. John Does 1-25*, 2012 WL 2367555 at

3   *3. Indeed, the pieces of the copyrighted works at issue herein were shared by all of

4   the defendants and are all traceable back to the same original file made accessible by

5   the same initial seeder.  *See Patrick Collins*, 2012 WL 1190840 at *4-5 ("[I]n the

6   universe of possible transactions, at some point, each Defendant downloaded a piece

7   of the [work], which had been transferred through a series of uploads and downloads

8   from the Initial Seeder, through other users or directly, to each Defendant….").

9   Moreover, because of the nature of the BitTorrent protocol, each defendant's

10  participation in the swarm facilitated, even if only indirectly, the participation of the

11  other defendants who followed in time.  *Cf. Digital Sin, Inc. v. Does 1-27*, 2012 WL

12  2036035 at *1 (S.D.N.Y. June 6, 2012) (noting that BitTorrent's benefit of

13  "increased speed, efficiency, and reliability…is heightened as more and more users

14  participate in a single 'swarm.'").

15          In this regard, each defendant in this case is alleged not only to have

16  downloaded a piece of the works at issue but also to have uploaded a piece of the

17  works to Plaintiff's investigator.  *See* Declaration of Tobias Fieser in Support of

18  Motions for Leave to Serve Third Party Subpoenas, ¶¶ 16-21.  They did so despite

19  the fact that most BitTorrent client programs permit users to restrict their uploading

20  capability. Indeed, as previously discussed, the tit-for-tat incentive system built into

21  BitTorrent is designed precisely to encourage peers to act in this type of

22  collaborative manner.[4]

23          The length of time over which defendants are alleged to have participated in

24  _____

25  [4] The derisive term "leecher" is employed to describe users who inhibit their
    uploading rates or who exit BitTorrent after having completed a download, thereby
26  preventing the file from being uploaded to other peers. *See Patrick Collins*, 2012
    WL 1190840 at *2.
27

28                                              7

1   the swarm does not undermine the interrelated nature of their actions.  "[T]he law of

2   joinder does not have a precondition that there be temporal distance or temporal

3   overlap…."  *Patrick Collins*, 2012 WL 1190840 at *8; *see also OpenMind*

4   *Solutions, Inc. v. Does 1-39*, 2011 WL 4715200 (N.D.Cal. Oct. 7, 2011) (finding

5   joinder is proper and stating that "[w]hile this period might seem protracted, such

6   time periods can be somewhat arbitrary in BitTorrent-based cases as long as the

7   alleged defendants participate in the same swarm, downloading and uploading the

8   same file.").  As described above, the BitTorrent protocol operates such that every

9   user is logically related to every other user who participates in the same swarm,

10  regardless of their time of participation. *See Patrick Collins*, 2012 WL 1190840; *see*

11  *also First Time Videos, LLC v. Does 1-95*, 2011 WL 4724882 at *6 (N.D.Cal. Oct.

12  7, 2011) (noting that "even after a Doe Defendant disconnects from the swarm, the

13  parts of the file that he downloaded and uploaded will continue to be transferred to

14  other Doe Defendants remaining in the swarm").

15          While the period at issue may therefore appear protracted by ordinary

16  standards, the doctrine of joinder must be able to adapt to the technologies of our

17  time.  Indeed, "[w]ith the advent of industrialization, high-speed transportation, and

18  urbanization, more intricate disputes appeared with greater frequency, requiring

19  greater use of the more liberal joinder procedures."  *Ginett v. Computer Task Grp.,*

20  *Inc.*, 962 F.2d 1085, 1094 (2d Cir. 1992) (internal quotation marks omitted).  Here,

21  as discussed in more detail below, the nature of the technology compels the

22  conclusion that defendants' alleged transactions were part of the same "series of

23  transactions or occurrences."  *See Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 239,

24  244 (S.D.N.Y. 2012) ("it is difficult to see how the sharing and downloading

25  activity alleged in the Complaint – a series of individuals connecting either directly

26  with each other or as part of a chain or 'swarm' of connectivity designed to illegally

27  copy and share the exact same copyrighted file—could *not* constitute a 'series of

28

1 transactions or occurrences' for purposes of Rule 20.").  As a result, Plaintiff

2 respectfully requests that the Court deny Defendant's motion.

3      **B.**     <u>**The Infringement Occurred Through A Series of Transactions and**</u>

4            <u>**Plaintiff Has Pled That Defendants Are Jointly and Severally**</u>

5            <u>**Liable**</u>

6      According to Defendant, in order for joinder is to be proper, there must be

7 direct defendant-to-defendant computer interaction.  But that is not the standard for

8 joinder.  Federal Rule of Civil procedure 20(a) permits joinder for: (1) the *same*

9 transaction or occurrence, <u>or</u> (2) a *series* of transactions or occurrences, <u>or</u> (3) claims

10 upon which the Plaintiff asserts the right to relief jointly or "severally" against the

11 defendants.  *See* Fed.R.Civ.P. 20(a)(2).  Here, Plaintiff has pled that the defendants

12 are properly joined because they were involved in a *series* of transactions or

13 occurrences <u>and</u> because defendants are jointly and severally liable.  Complaint, ¶ 10.

14      **1.**    **Series of Transactions or Occurrences.**

15      "The Ninth Circuit has interpreted the phrase 'same transaction, occurrence, or

16 series of transactions or occurrences' to require a degree of factual commonality

17 underlying the claims."  *Bravado Int'l Group Merch. Servs. v. Cha*, 2010 WL

18 2650432 at *4 (C.D.Cal. June 30, 2010) (citing *Coughlin v. Rogers*, 130 F.3d 1348,

19 1350 (9th Cir. 1997)).  Typically, this means that a party "must assert rights…that

20 arise from related activities – a transaction or an occurrence or a series thereof."  *Id.*

21 (citation omitted).  Many courts, including this Court, have routinely held that joinder

22 is proper in BitTorrent actions because of the unique nature of BitTorrent technology

23 *Liberty Media*, 2012 WL 628309 at *7; *see also, Patrick Collins, Inc. v. John Does*

24 *1-2590*, 2011 WL 4407172 at *6 (N.D.Cal. 2011); *OpenMind Solutions, Inc.*, 2011

25 WL 4715200, *6; *Call of the Wild Movie v. Does 1-1062*, 770 F.Supp.2d 332, 343

26 (D.D.C. 2011).  Indeed, by causing *all* users to distribute the file, BitTorrent ensures

27 that all peers in a swarm materially aid every other peer.  *Liberty Media Holdings*,

28                     9

1  2012 WL 628309 at *7.

2      Exhibit A to the Complaint reflects that each of the Doe defendants herein

3  were present in the same swarm on BitTorrent and shared pieces of the same seed

4  files.  Indeed, with respect to the particular swarm at issue here, the hash (an

5  alphanumeric representation of a digital file) associated with the copied file's torrent

6  file remained the same within the swarm. Complaint, ¶¶ 40-44.  Further, the alleged

7  infringers all participated in the same exact swarm and downloaded the same exact

8  copyrighted file. Declaration of Tobias Fieser in Support of Plaintiff's Motions for

9  Leave to Serve a Subpoena Prior to a Rule 26(f) Conference, ¶¶ 19-20.  Simply,

10  here, each putative Defendant is a possible source for Plaintiff's copyrighted work,

11  and is responsible for distributing the work to the other putative defendants, who

12  are also using the same BitTorrent technology to copy the identical copyrighted

13  material.  *See OpenMind Solutions*, 2011 WL 4715200 at*6 (finding that Plaintiff

14  provided enough specificity to make a preliminary determination that the doe

15  defendants were part of the same swarm and holding that "Plaintiff's claims against

16  Defendants appear logically related"); *Disparte v. Corp. Exec. Bd.*, 223 F.R.D. 7, 10

17  (D.D.C. 2004) (to satisfy Rule 20(a)(2)(A) claims must be "logically related" and

18  this test is "flexible."). While Defendants may be able to rebut these allegations

19  later, Plaintiff has sufficiently alleged that its claims against Defendants stem from

20  the same transaction or occurrence, and are logically related.  *See Arista Records,*

21  *LLC v. Does 1-19*, 551 F.Supp.2d 1, 11 ("While the Court notes that the remedy for

22  improper joinder is severance and not dismissal, … the Court also finds that this

23  inquiry is premature without first knowing Defendants' identities and the actual

24  facts and circumstances associated with Defendants' conduct.").

25      Moreover, while the logical relationship test does not require it, should this

26  matter go trial, Plaintiff will prove that the Defendants' infringement was committed

27  through the same series of transactions with mathematical certainty by

28

demonstrating, *inter alia,* that the algorithm used by BitTorrent trackers would have caused the entire series of transactions to be different *but for* each of the Defendants' infringements.

### 2.    The Joinder Rule Does Not Require Direct Interaction.

Defendant erroneously contends that direct computer-to-computer interaction is required for joinder to be proper.  *United States v. Mississippi*, 380 U.S. 128 (1965), is instructive on this point.  In that case, the United States Supreme Court found that the joinder of six defendants, election registrars of six different counties, was proper because the allegations were all based on the same state-wide system designed to enforce voter registration laws in a way that would deprive African Americans the right to vote. The complaint did not allege that the registrars directly interacted with each other, that they knew of each other's actions, or that each other's actions directly affected the other in any way.  The Supreme Court nonetheless interpreted Rule 20 to hold a right to relief severally because the series of transactions were related and contained a common question of law and fact:

> [T]he complaint charged that the registrars had acted and were
> continuing to act as part of a state-wide system designed to enforce
> the registration laws in a way that would inevitably deprive colored
> people of the right to vote solely because of their color.  On such an
> allegation the joinder of all the registrars as defendants in a single suit
> is authorized by Rule 20(a) of the Federal Rules of Civil Procedure.

*Id.* at 142; *see also, Raw Films v. John Does 1-15,* 2012 WL 1019067 at *4 (E.D.Pa. Mar. 26, 2012) ("even if no Doe defendant directly transmitted a piece of the Work to another Doe defendant, the Court is satisfied at this stage of the litigation the claims against each Doe defendant appear to arise out of the same series of transactions or occurrences, namely, the transmission of pieces of the same copy of the Work to the same investigative server.").  The Supreme Court thus held that all of the defendants were joined properly because they were all acting on the basis of

11

1  the same system which created a transactional relatedness.

2      Likewise, in this case, it is not necessary for each of the Defendants to have

3  *directly* interacted with each other Defendant, or have shared a piece of the file with

4  each and every Defendant when downloading the movie.  Defendants are properly

5  joined because, as discussed above, their actions directly relate back to the same

6  initial seed of the swarm, and their alleged infringement further advances the series

7  of infringements that began with that initial seed and continued through other

8  infringers.  The Defendants all acted under the same exact system, and it is

9  sufficient that the Defendants shared pieces that originated from the same exact file,

10 and opened their computer to allow others to connect and receive these pieces.

11      **3.      Plaintiff Properly Pled Joint And Several Liability.**

12      The notion that direct defendant-to-defendant interaction must take place in

13 order for joinder to be proper is belied by the plain language of Rule 20, which

14 provides that defendants are properly joined if any right to relief is asserted against

15 them jointly or severally.  Fed.R.Civ.P. 20(a)(2)(A).

16      A right to relief against defendants jointly requires concerted action by
   two or more parties. A right to relief severally against defendants
17   means that each right to relief is separate and distinct from defendant to
   defendant and no interaction among the defendants is required. An
18   'alternative' right to relief may be asserted when plaintiff knows one of
   the defendants is liable, but does not know which one. 4 Moore's
19   Federal Practice § 20.03. Plaintiff asserts a right to relief against
   Defendants jointly and a right to relief severally; however, a right to
20   relief against the Defendants severally alone is sufficient to satisfy the
   first clause of Rule 20.

21

22 *Patrick Collins, Inc,* 2012 WL 1190840, at *8 (emphasis added).  As such, "concert

23 of action, *i.e.,* a right to relief jointly, is not a precondition of joinder."  *Id.*  Here,

24 Plaintiff asserts a right to relief jointly against Defendants *and* severally. Complaint,

25 ¶ 10, Prayer for Relief ¶ D.  Therefore, the first clause of Rule 20(a)(2)(A) is

26 satisfied.

27

28

1

### C.    There Are Common Issues of Fact and Law

2      The second requirement for permissive joinder under Rule 20(a)(2) requires

3  Plaintiff's claims to contain a common question of law or fact. Fed.R.Civ.P.

4  20(a)(2)(B).  This requirement is clearly met.  Here, Plaintiff will have to establish

5  the same legal claims concerning the validity of its copyrights and the infringement

6  of the exclusive rights reserved to Plaintiff as copyright holder. Furthermore,

7  Plaintiff must prove that each individual named as a defendant used the same

8  BitTorrent file-sharing protocol to illegally distribute and download its copyrights

9  and, consequently, factual issues related to how BitTorrent works and the methods

10  used by Plaintiff to investigate, uncover, and collect evidence about the infringing

11  activity will be essentially identical for each defendant. *See Call of the Wild*, 770

12  F.Supp.2d 332 at 343 ("In each case, the plaintiff will have to establish against each

13  putative defendant the same legal claims concerning the validity of the copyrights in

14  the movies at issue and the infringement of the exclusive rights reserved to the

15  plaintiffs as copyright holders."). The commonality in facts and legal claims

16  supports joinder under Rule 20(a)(2)(B).

17

### D.    The Law of Joinder Does Not Require Temporal Overlap

18      The nature of the BitTorrent protocol provides for *continuous* seeding and

19  distributing of the movie long after it has downloaded.  Without stopping the

20  program by physically un-checking the automatic seeding, an alleged infringer

21  likely will seed and distribute a movie for an extended period of time.  The Southern

22  District of New York in *Malibu Media, LLC v. John Does 1-5*, 2012 WL 3641291 at

23  *4 (S.D.N.Y. Aug. 24, 2012), recognized that the concept of joinder is adaptable to

24  changing technological landscapes impacting the complexity of lawsuits, and found

25  that the length of time over which the defendants were alleged to have participated

26  in the swarm (88 days) did not undermine the related nature of their actions.  Indeed,

27  even if a BitTorrent user downloads a movie relatively quickly, they may continue

28

1  to upload the movie to other users for weeks or months.  As discussed above, the

2  BitTorrent protocol encourages such illegal sharing.

3       Judge Randon of the Eastern District of Michigan further explained:

> [I]t is not that an infringer would wait six weeks to receive the Movie,
> it is that the infringer receives the Movie in a few hours and then
> leaves his or her computer on with the Client Program uploading the
> Movie to other peers for six weeks. Because the Client Program's
> default setting (unless disabled) is to begin uploading a piece as soon
> as it is received and verified against the expected Hash, it is not
> difficult to believe that a Defendant who downloaded the Movie on
> day one, would have uploaded the Movie to another Defendant or peer
> six weeks later. This consideration, however, is irrelevant since
> concerted action is not required for joinder.

*Patrick Collins, Inc.*, 2012 WL 1190840.  The Northern District of California is in

accord.  *See First Time Videos, LLC*, 2011 WL 4724882 ("[w]hile this [two month]

period might seem protracted, such time periods can be somewhat arbitrary in

BitTorrent-based cases as long as the alleged defendants participate in the same

swarm, downloading and uploading the same file."); *OpenMind Solutions*, 2011 WL

4715200 at *6 (same and declining to sever case).  Likewise, the District Court of

Maryland stated in a similar case:

> Although the downloads in this case occurred over a span of six
> weeks, suggesting that the Does were not downloading the
> copyrighted movie at the exact same time, <u>Plaintiff has adequately
> alleged that each download directly facilitated the others in such a
> way that the entire series of transactions would have been different
> but for each of Defendants' infringements</u>. As such, Plaintiff has
> sufficiently shown a logical relationship between the series of
> individual downloads.

*K-Beech, Inc. v. Does 1-31*, 2012 WL 1431652 (D. Md. Apr. 24, 2012) (emphasis

added).

     In sum, time constraints should not impact the fact that the infringements

occurred through a series of transactions.

### E.   Joinder Promotes Judicial Efficiency And Is Not Prejudicial

At this stage in the proceedings, joinder "is the single, most efficient mechanism available for the plaintiff to obtain information to identify those illegally downloading and distributing its movie." *AF Holdings LLC*, 2012 WL 3204917 at *13 (D.D.C. August 6, 2012).  Indeed, "[j]oinder in a single case of putative defendants who allegedly infringed the same copyrighted material promotes judicial efficiency and, in fact, is beneficial to the putative defendants." *Open Mind Solutions*, 2011 WL 4715200 at *7; *see also*, *Call of the Wild*, 770 F.Supp.2d at 344 (same).

Here, Plaintiff seeks to obtain identifying information from ISPs so that it can properly name and serve Defendants. If the Court were to consider severance at this juncture, Plaintiff would face significant obstacles in its efforts to protect its copyright from illegal file-sharers, and this would only needlessly delay the case. Plaintiff would be forced to file numerous separate lawsuits, in which it would then move to issue separate subpoenas to ISPs for each defendant's identifying information. Plaintiff would additionally be forced to pay the Court separate filing fees in each of these cases, which would further limit its ability to protect its legal rights. "This burden for the plaintiff – not to mention the judicial system – would significantly frustrate the plaintiff's efforts to identify and seek a remedy from those engaging in the alleged infringing activity." *AF Holdings LLC, supra,* 2012 WL 3204917 at *13; *see also Call of the Wild*, 770 F.Supp.2d at 334 ("This would certainly not be in the 'interests of convenience and judicial economy,' or 'secure a just, speedy, and inexpensive determination of the action.'" (citation omitted)).

Furthermore, the unknown Doe defendants are not prejudiced by joinder at this stage in the litigation:

> The unknown individuals alleged to have infringed the plaintiff's copyright are not prejudiced by joinder.  These individuals are identified only by the IP address assigned to the computers found by

the plaintiff being used for allegedly infringing activity, and they are not named as defendants in this case.  Given that the plaintiff has not named or asserted claims against the individuals associated with the Listed IP Addresses, these unknown individuals have no obligation to respond to the Complaint or assert a defense.  If the plaintiff chooses to name as a defendant any of these unknown individuals – after obtaining their information and evaluating the viability of a lawsuit – the defendants may then be able to demonstrate prejudice by joinder with others accused of similar activity.  *Until that time, these individuals can demonstrate no legally cognizable harm by virtue of the plaintiff filing a lawsuit against 'John Does.'*

*AF Holdings LLC*, 2012 WL 3204917 at *13; *see also Call of the Wild,* 770 F.Supp.2d at 334 (declining to sever defendants where parties joined promotes more efficient case management and discovery and no party prejudiced by joinder).  The Court went on to find that "joinder at this stage in the proceedings is the single, most efficient mechanism available for the plaintiff to obtain information to identify those allegedly illegally downloading and distributing its movie."  *AF Holdings LLC,* 2012 WL 3204917 at *13.

Put simply, the putative defendants are not prejudiced but likely benefitted by joinder, and severance would debilitate Plaintiff's efforts to protect its copyrighted material and seek redress from Defendant, who has allegedly engaged in infringing activity.   At this preliminary stage, Plaintiff has met the requirements of permissive joinder under Rule 20(a)(2), and, thus Defendant's motion to quash should be denied.

    **F.**     <u>**Defendant Has Not Identified A Single Abusive Litigation Tactic That Would Merit Severance**</u>

        **1.**     **Plaintiff Is Not Engaged In Improper Settlement Tactics**

Without any factual support whatsoever, Defendant contends that Plaintiff is engaged in abusive litigation tactics to coerce settlements. Defendant is attempting to influence this Court into making a decision based on accusations in other cases involving other counsel and other plaintiffs. Indeed, Defendant cites to cases that can only refer to vague, anecdotal accusations of improper settlement tactics.  These

1   erroneous conclusions are propagated by anti-copyright blogs (including Mr. Pietz's

2   blog) as a suggested defense strategy.  While Defendant goes to substantial effort to

3   decry Plaintiff's purpose and settlement attempts, Defendant has not – and cannot –

4   provide one specific example of Plaintiff improperly holding a defendant to account.

5         The District of Arizona aptly concluded in a case similar to this that "[t]he

6   likelihood that [Defendant] will be subject to such tactics is minimal here; the Court

7   will not conclude based on the tactics of other lawsuits in other districts that this suit

8   was brought for a purely improper purpose." *Patrick Collins, Inc. v. Does 1-54*,

9   2012 WL 911432 (D.Ariz. Mar. 19, 2012); *see also, Third Degree Films v. Does 1-*

10  *36,* 2012 WL 2522151 (E.D.Mich. May 29, 2012) ("Defendant has offered no case-

11  specific facts supporting this claim [of coercive settlement tactics]. Rather,

12  Defendant relies on the conduct of adult-film companies in other cases. *This guilt-*

13  *by-association argument does not justify quashing the subpoena that this Plaintiff,*

14  *Third Degree Films, served on Defendant's ISP* pursuant to an Order entered by

15  Judge Murphy allowing this discovery." (emphasis added)).

16        Defendant's criticism of Plaintiff's attempt to settle its disputes with the doe

17  defendants prior to naming and serving them with process is unfounded and

18  unsupported.  Indeed, such settlement demands are routinely made by most – if not

19  all – plaintiffs prior to the filing of a lawsuit, and are in line with the well-

20  established public policy favoring resolution through settlements. *Marek v. Chesny*,

21  473 U.S. 1, 11 (1985) ("Rule 68's policy of encouraging settlements is neutral,

22  favoring neither plaintiffs nor defendants; it expresses a clear policy of favoring

23  settlement of all lawsuits.").  Moreover, Plaintiff has a First Amendment right under

24  the petition clause to make a settlement demand.  *See Sosa v. DirectTV*, 437 F. 3d

25  923, 937 (9th Cir. 2006) (holding "the protections of the Petition Clause extend to

26  settlement demands as a class," including those made during and prior to a suit.).

27  The only difference between this case and the countless others filed every day by

28

1  other plaintiffs in a broad array of civil litigation is that the Plaintiff does not have

2  the ability to identify the defendants before the suit is filed.

3      **2.**  **Defendant's Counsel Was *Not* Subjected to Any Abusive**

4        **Tactics**

5     The declaration submitted by Mr. Pietz in support of this motion, was initially

6  filed on behalf of another Doe defendant in another case brought by a different

7  plaintiff pending in the Central District of California, *Malibu Media v. Does 1-10*,

8  Case No. CV12-3615-RGK-SSx ("Central District Case"), is fraught with hearsay

9  statements that Mr. Pietz has no personal knowledge of, and fails entirely to identify

10  a single "abusive" litigation tactic employed by Plaintiff or its counsel.

11     Importantly, Mr. Pietz contends that abusive litigation tactics were at play in

12  the Central District Case, but the defendant in that case was clearly represented by

13  counsel (Mr. Pietz), and, as in this case, neither Plaintiff's counsel nor Plaintiff had

14  any communication whatsoever with Mr. Pietz's client.  It was simply without merit

15  for Mr. Pietz to claim that a "shake down" occurred.  *Malibu Media, LLC v. John*

16  *Does 1-9*, Case No. 8:12-cv-00669-SDM-AEP, Docket no. 25 at p. 7 (M.D.Fla. July

17  6, 2012) (finding that the defendant's criticism of plaintiff's attempts to settle "is

18  simply without any merit in those cases where the John Doe Defendant is

19  represented by counsel.").

20     Although Mr. Pietz's declaration is largely irrelevant to this case because it

21  purports to relate to a *different* plaintiff altogether, Plaintiff will nonetheless address

22  each of the purported "tactics" addressed in the Pietz declaration because it

23  implicates Plaintiff's counsel.

24     <u>First</u>, Mr. Pietz speciously claims that it was abusive that Plainiff did not

25  relate *all* of the cases it has pending in the Southern District.  It remains unclear how

26  this purported "tactic" is abusive and/or how it affected his client, particularly

27  where, as here, Mr. Pietz filed a Notice of Related Case and the case was

28

1  subsequently related.

2   <u>Second</u>, Mr. Pietz criticizes Malibu Media and Patrick Collins for employing

3  individual(s) to discuss settlements or potential settlements with defendants.  This is

4  no different than a company employing a paralegal or litigation support team, and

5  that fact alone does not lend itself to the conclusion that the individual conducted a

6  "shake down."  Indeed, in the case referred to by Mr. Pietz in his declaration, ***it was***

7  ***Mr. Pietz who contacted Plaintiff to discuss settlement***.  Plaintiff did not initiate the

8  discussions.

9   <u>Third</u>, Mr. Pietz contends that the statutory damages range was

10  misrepresented to him.  This is a blatant misrepresentation.  Indeed, the statutory

11  minimum for copyright infringement is not $200 per infringement.  Section

12  504(c)(1) of the Copyright Act specifically prescribes statutory damages "in a sum

13  of not less than $750 or more than $30,000 as the court considers just," and allows

14  the Court to increase the award to $150,000 where willful infringement is found.  17

15  U.S.C. 504(c)(1)-(2).  The statute does not provide an alternative minimum, but

16  rather gives the court discretion to lower the award to an amount of not less than

17  $200 where innocent infringement occurred.  Here, and in the Central District Case,

18  Plaintiff alleged in its Complaint that the Defendant's acts of copyright infringement

19  were committed willfully, and Defendant's pattern of illegal downloading is

20  evidence of their willful infringement. Complaint, ¶¶ 52, 62.

21   <u>Fourth</u>, Mr. Pietz sought to settle all known and unknown claims on behalf of

22  his clients, and obtain a general release of all claims.  But Mr. Pietz's clients are

23  serial copyright infringer, and infringed on numerous other copyrights that the

24  plaintiff in that case owned. Thus, Mr. Pietz was made aware of that fact, which was

25  probative of the willful nature of his clients' infringement.

26   <u>Fifth</u>, Mr. Pietz incredulously contends that in serving subpoenas seeking

27  phone numbers and emails, the plaintiff in the Central District Case violated an

28

order issued by Magistrate Judge Brown in another case in the Eastern District of New York. *See In re BitTorrent Adult Film Copyright Infringement Cases*, 2012 WL 1570765.  But Judge Brown's decision was not binding precedent on Central District.  The plaintiff's subpoenas in the Central District Case, however, were in direct compliance with Judge King's and Judge Eick's orders therein authorizing Plaintiff to "take any necessary action" to ascertain the identities of the Doe defendants. Likewise, here, the Court authorized Plaintiff to serve subpoenas seeking the Doe defendants' identifying information, and Plaintiff did just that.

Sixth, as discussed above, Defendant is wrong. Plaintiff has sued and served numerous individual defendants for copyright infringement in courts throughout the country, and has every intention of litigating this case as well.  *See, e.g., Patrick Collins, Inc. v. Butler*, Case No. 2:12-cv-4199 (ER) (E.D.Pa.); *K-Beech, Inc. v. Vanderhorst*, Case No. 5:11-cv-06432-BMS (E.D.Pa.) (Patrick Collins, Inc. is a plaintiff in the case); *Patrick Collins, Inc. v. Vonvalkenburg*, Case No. 2:12-cv-13948-LPZ-MJH (E.D.Mich.); *Patrick Collins, Inc. v. Maisonville*, Case No. 4:12-cv-13888-MAG-MAR (E.D.Mich.); *Patrick Collins, Inc. v. Hansen*, Case No. 1:11-cv-02702-WYD-MEH (D.Colo.); *Patrick Collins, Inc. v. Boussetta, et al.*, Case No. 1:12-cv-00887-REB-MEH (D.Colo.); *Patrick Collins, Inc. v. Herron, et al.*, Case No. 6:12-cv-00478-GAP-GJK (M.D.Fla.).

In sum, Defendant has not offered any proof – because there is none – that Plaintiff (or its counsel) has engaged in any abusive litigation tactics in this, or any other, case.

## V.   THE SUBPOENAS SHOULD NOT BE QUASHED

### A.   Legal Standard.

Motions to quash subpoenas are governed by Federal Rule of Civil Procedure 45.  Rule 45(c)(3) provides, in relevant part, that a subpoena must be modified or quashed if it "requires disclosure of privileged or other protected matter" or

20

1    "subjects a person to undue burden."  Fed.R.Civ.P. 45(c)(3)(A); *Patrick Collins, Inc.*

2    *v. Does 34-51*, 2012 WL 871269 at *1 (S.D.Cal. Mar. 14, 2012).  In evaluating

3    whether a subpoena is burdensome, "the court balances the burden imposed on the

4    party subject to the subpoena by the discovery request, the relevance of the

5    information sought to the claims or defenses at issue, the breadth of the discovery

6    request, and the litigant's need for information."  *Liberty Media*, 2012 WL 628309

7    at *2.

8        Defendant does not contend that the subpoena should be quashed because the

9    information sought therein is privileged.  Nor does Defendant contend that he or she

10   will be subject to an undue burden if the subpoenas are not quashed.  Instead,

11   Defendant argues that the subpoenas should be quashed because he or she has a

12   privacy interest in his or identifying information, because the subpoena is not likely

13   to identify the actual infringer, and because joinder is not proper.  As discussed

14   below, neither of these purported bases provides the Court with sufficient grounds to

15   quash the subpoenas.

16        **B.**    **The Subpoena Seeks Relevant Information That Is Likely To**

17            **Identify The Infringer**

18        In granting Plaintiff's requests for early discovery, this Court found that

19   Plaintiff established good cause for the issuance of the requested subpoenas. Indeed,

20   Plaintiff cannot identify the Doe defendants without early discovery from the ISP

21   and that early discovery is necessary because the ISP is not required to maintain its

22   logs for any set period of time.

23        Defendant speciously contends that the subpoenas should be quashed because

24   they *may* not reveal the identities of the true infringers.  Though unlikely, even if the

25   IP holders are not the actual infringers, the information sought is still relevant and

26   discoverable. Rule 26 of the Federal Rules of Civil Procedure defines the scope of

27   discovery as including "any nonprivileged matter that is relevant to any party's

28  

claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things *and the identity of the location or persons who know of any discoverable matter*." Fed. R. Civ. P. 26(b)(1) (emphasis added). Relevant information for discovery purposes includes any information "reasonably calculated to lead to the discovery of admissible evidence." *Id.*

The Eastern District of Pennsylvania court recently discussed whether an IP address was sufficient to identify the infringer:

> The Court acknowledges that Verizon's compliance with the subpoena may not directly reveal the identity of an infringer. Indeed, the subscriber information Verizon discloses will only reveal the account holder's information, and it may be that a third party used that subscriber's IP address to commit the infringement alleged in this case.

*Raw Films, Ltd,* 2012 WL 1019067 (internal citations omitted). The Court went on to note that while the IP address did not guarantee the subscriber was the infringer, "[t]he subpoena is specific enough to give rise to a reasonable likelihood that information facilitating service upon proper defendants will be disclosed if the ISPs comply." *Id.* Likewise, here, the information sought by Plaintiff – namely, information sufficient to identify the Doe defendants – falls squarely within the broad scope of discovery and is warranted in this matter.

Defendant relies heavily on Judge Brown's opinion in *In re BitTorrent Adult Film Copyright Infringement Cases*, 2012 WL 1570765, *14 (E.D.N.Y. May 1, 2012), where Judge Brown questioned the likelihood that the infringer was the owner of the IP address. However, recent technological advances make it more likely that a wireless account will be secured and can easily be traced to a household where the subscriber either is the infringer or knows the infringer. Recently, PC Magazine published an article stating: "These days, you are lucky to find one in 100

1   Wi-Fi connections that are not protected by passwords of some sort."[5] "The reason

2   for the change is simple: the router manufacturers decided to make users employ

3   security with the set-up software.  As people upgrade to newer, faster routers, the

4   wide-open WiFi golden era came to an end."[6]  This article, published on March 26,

5   2012, runs contrary to Judge Brown's assertions and supports the idea that most

6   households do have closed, protected wireless.  Moreover, Judge Brown's decision

7   has been rejected by Judge E. Thomas Boyle, also presiding in the Eastern District

8   of New York, who not only authorized subpoenas in a similar case but also denied a

9   motion to quash finding that joinder was proper. *Malibu Media, LLC v. John Does*

10  *1-13*, 2012 WL 2325588 (E.D.N.Y. June 19, 2012).

11      C.      The Doe Defendants Do Not Have a First Amendment Right to

12              Proceed Anonymously

13      Defendant further contends that the First Amendment affords him or her the

14  right to proceed anonymously in this action.  To the contrary, "First Amendment

15  privacy interests are exceedingly small where the 'speech' is the alleged infringement

16  of copyrights."  *Arista Records LLC v. Does 1-19*, 551 F. Supp. 2d at 8; *see also*

17  *Achte/Neunte Boll Kino Beteiligungs GMBH & Co, KG v. Does 1-4,577,* 2010 U.S.

18  Dist. LEXIS 94594, at *10 n.2 (D.D.C. Sept. 10, 2010) ("the protection afforded to

19  such speech is limited and gives way in the face of a *prima facie* showing of

20  copyright infringement"); *West Bay One, Inc. v. Does 1-1653*, 270 F.R.D. 13, 16 n.4

21  (D.D.C. July 2, 2010) (same); *Sony Music Entertainment v. Does 1-40*, 326 F. Supp.

22  2d 556, 567 (S.D.N.Y. 2004) (First Amendment right of alleged file-sharers to

23  remain anonymous "must give way to the plaintiffs' right to use the judicial process

24

25

26  [5] *See Free Wi-Fi is Gone Forever*, www.pcmag.com/article2/0,2817,2402137,00.asp

27  [6] *Id.*

28                                          23

1   to pursue what appear to be meritorious copyright infringement claims.”); *Elektra*

2   *Entm't Group, Inc. v. Does 1-9*, No. 04-2289, 2004 WL 2095581, at *4-5 (S.D.N.Y.

3   Sept. 8, 2004) (finding that First Amendment right to anonymity overridden by

4   plaintiff's right to protect copyright).

5        Judge Howell of the District Court for the District of Columbia recently denied

6   a motion filed by Defendant's counsel (Morgan Pietz) containing virtually identical

7   arguments, and held that the Doe defendants could not proceed anonymously: “The

8   use of anonymity as a shield from copyright liability is not a motivation that warrants

9   protection from the Court.  To the extent that the putative defendant has a First

10  Amendment interest at stake, that interest is small.  ***The First Amendment does not***

11  ***protect copyright infringement.***”  *Malibu Media, LLC v. John Does 1-14*, Case No.

12  12-00764 (BAH), Docket no. 14 at pp. 6-7 (emphasis added); *see also, Harper &*

13  *Row Publishers, Inc. v. Nat'l Enters.*, 471 U.S. 539, 560 (1985); *A&M Records v.*

14  *Napster, Inc.*, 239 F.3d 1004, 1028 (9th Cir. 2001) (holding that the First Amendment

15  does not protect use of peer-to-peer file sharing network that constitutes copyright

16  infringement); *Columbia Pictures, Inc. v. Bunnell,* 245 F.R.D. 443, 451-52 (C.D.Cal.

17  2007) (“To the extent the users are engaged in copyright infringement, the First

18  Amendment affords them no protection whatsoever.”).  Indeed, even if the users are

19  engaged in legal file sharing, “they have little to no expectation of privacy because

20  they are broadcasting their identifying information to everyone in the BitTorrent

21  ‘swarm’ as they download the file.”  *Columbia Pictures*, 245 F.R.D. 443 at 452.

22       Moreover, numerous courts have found that copyright infringers have no

23  legitimate expectation of privacy in the subscriber information they provide to ISPs.

24  *Doe v. S.E.C.*, 2011 WL 4593181 at *3 (N.D.Cal. Oct. 4, 2011) (“Internet

25  subscribers do not have a reasonable expectation of privacy in subscriber

26  information they have already conveyed to their [Internet Service Providers].”); *see*

27  *also, Guest v. Leis*, 255 F.3d 325, 226 (6th Cir. 2001) (holding that “computer users

28

24

1  do not have a legitimate expectation of privacy in their subscriber information

2  because they have conveyed it to another person – the system operator"); *U.S. v.*

3  *Hambrick*, Civ. No. 99-4793, 2000 WL 1062039 at *4 (4th Cir. Aug. 3, 2000) (a

4  person does not have a privacy interest in the account information given to the ISP

5  in order to establish an email account); *Achte/Neinte Boll Kino Beteiligungs Gmbh*

6  *& Co. v. Does 1-4,577*, 736 F.Supp.2d at 215 (same); *U.S. v. Kennedy*, 81 F.Supp.2d

7  1103, 1110 (D.Kan. 2000) (defendant's right to privacy was not violated when an

8  ISP turned over his subscriber information because there is no expectation of

9  privacy in information provided to third parties).  Because the information sought is

10  not privileged or protected by a privacy interest, the motion should be denied.

11      **D.      Misjoinder Is Not A Sufficient Basis To Quash The Subpoenas**

12          This Court has repeatedly held that "by its terms, Rule 45 does not provide

13  authority for a Court to quash a subpoena based on misjoinder."  *Patrick Collins,*

14  *Inc. v. Does 34-51*, 2012 WL 871269 at *1 (S.D.Cal. Mar. 14, 2012).  Moreover, as

15  discussed above, joinder is proper in this case.  *See, Liberty Media Holdings v. Does*

16  *1-62*, 2012 WL 628309 at *4-7; *Malibu Media, LLC v. John Does 1-25*, 2012 WL

17  2367555 at *3.

18  **VI.    CONCLUSION**

19          For all of the foregoing reasons, Plaintiff respectfully requests that the Court

20  deny Defendant's motion in its entirety.  Plaintiff further requests that the Court

21  order counsel for Defendant to identify which Doe number he purports to represent.

22  DATED: November 16, 2012             KUSHNER LAW GROUP

23

24                                By:  _____/s/ Leemore L. Kushner_____

25                                     Leemore L. Kushner
                                       Attorneys for Plaintiff Patrick Collins, Inc.

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

1

2

3   I hereby certify that I electronically filed the foregoing with the Clerk of the

4 Court using the CM/ECF system which will send notification of such filing to the

5 Electronic Service List for this Case.

6 Dated:  November 16, 2012    KUSHNER LAW GROUP

7

8

9         By: */s/ Leemore Kushner*    .

10          Leemore Kushner

          Attorneys for Plaintiff Patrick Collins, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff's Opposition to Defendant's Motion to Sever and Quash